## FALL v. EASTIN.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 24.  Submitted April 30, 1909.—Decided November 1, 1909.

While a court of equity acting upon the person of the defendant may decree a conveyance of land in another jurisdiction and enforce the execution of the decree by process against the defendant, neither the decree, nor any conveyance under it except by the party in whom title is vested, is of any efficacy beyond the jurisdiction of the court. *Corbett* v. *Nutt*, 10 Wall. 464.

A court not having jurisdiction of the *res* cannot affect it by its decree nor by a deed made by a master in accordance with the decree.

Local legislation of a State as to effect of a decree, or a conveyance made by a master pursuant thereto, on the *res* does not apply to the operation of the decree on property situated in another State.

The full faith and credit clause of the Constitution does not extend the jurisdiction of the courts of one State to property situated in another State, but only makes the judgment conclusive on the merits of the claim or subject-matter of the suit; and the courts of the State in which land is situated do not deny full faith and credit to a decree of courts of another State, or to a master's deed thereunder, by holding that it does not operate directly upon, and transfer the property.

75 Nebraska, 104, affirmed.

THE facts are stated in the opinion.

*Mr. Charles J. Greene, Mr. Ralph W. Breckenridge* and *Thomas H. Matters,* for plaintiff in error.

There was no appearance or brief for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The question in this case is whether a deed to land situate in Nebraska, made by a commissioner under the decree of a court of the State of Washington in an action for divorce, must be recognized in Nebraska under the due faith and credit clause of the Constitution of the United States.

The action was begun in Hamilton County, Nebraska, in 1897, to quiet title to the land and to cancel a certain mortgage thereon, given by E. W. Fall to W. H. Fall, and to cancel a deed executed therefor to defendant in error, Elizabeth Eastin.

Plaintiff alleged the following facts: She and E. W. Fall, who was a defendant in the trial court, were married in Indiana in 1876. Subsequently they went to Nebraska, and while living there, "by their joint efforts, accumulations and earnings, acquired jointly and by the same conveyance" the land in controversy. In 1889 they removed to the State of Washington, and continued to reside there as husband and wife until January, 1895, when they separated. On the twenty-seventh of February, 1895, her husband, she and he then being residents of King County, Washington, brought suit against her for divorce in the Superior Court of that county. He alleged in his complaint that he and plaintiff were *bona fide* residents of King County, and that he was the owner of the land in controversy, it being, as he alleged, "his separate property, purchased by money received from his parents." He prayed for a divorce and "for a just and equitable division of the property."

Plaintiff appeared in the action by answer and cross com-

plaint, in which she denied the allegations of the complaint, and alleged that the property was community property, and "was purchased by and with the money and proceeds of the joint labor" of herself and husband after their marriage. She prayed that a divorce be denied him, and that the property be set apart to her as separate property, subject only to a mortgage of $1,000, which she alleged was given by him and her. In a reply to her answer and cross complaint he denied that she was the "owner as a member of the community in conjunction" with him of the property, and repeated the prayer of his complaint.

Plaintiff also alleges that the Code of Washington contained the following provision:

"Sec. 2007 [now 4637]. In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody and support and education of the minor children of such marriage."

She further alleges that that provision had been construed by the Supreme Court of the State requiring of the parties to an action for divorce to bring into court all of " 'their property, and a complete showing must be made,' " and that it was decided that § 2007 [now 4637] conferred upon the court " 'the power, in its discretion, to make a division of the separate property of the wife or husband.' "

She further alleges that a decree was entered granting her a divorce and setting apart to her the land in controversy as her own separate property forever, free and unencumbered from any claim of the plaintiff thereto, and that he was ordered and directed by the court to convey all his right, title and interest in and to the land within five days from the date of the decree.

She also alleges the execution of the deed to her by the commissioner appointed by the court, the execution and recording of the mortgage to W. H. Fall and the deed to defendant; that the deed and mortgage were each made without consideration and for the purpose of defrauding her, and that they cast a cloud upon her title derived by her under the decree of divorce and the commissioner's deed. She prays that her title be quieted and that the deed and mortgage be declared null and void.

W. H. Fall disclaimed any interest in the premises, and executed a release of the mortgage made to him by E. W. Fall. Defendant answered, putting in issue the legal sufficiency of the complaint, and, in addition, set forth the fact of the loan of $1,000 to E. W. Fall, the taking of a note therefor signed by him and William H. Fall, the giving of an indemnity mortgage to the latter, and the execution subsequently of a deed by E. W. Fall in satisfaction of the debt. No personal service was had upon E. W. Fall, and he did not appear. A decree was passed in favor of plaintiff, which was affirmed by the Supreme Court. *Fall* v. *Fall*, 75 Nebraska, 104; 106 N. W. Rep. 412. A rehearing was granted and the decree was reversed, Judge Sedgwick, who delivered the first opinion, dissenting.

There is no brief for defendant in this court, but the contentions of the parties and the argument by which they are supported are exhibited in the opinions of the Supreme Court.

The question is in narrow compass. The full faith and credit clause of the Constitution of the United States is invoked by plaintiff to sustain the deed executed under the decree of the court of the State of Washington. The argument in support of this is that the Washington court, having had jurisdiction of the parties and the subject-matter, in determination of the equities between the parties to the lands in controversy, decreed a conveyance to be made to her. This conveyance, it is contended, was decreed upon equities, and was as effectual as though her "husband and she had been strangers and she had bought the land from him and

paid for it and he had then refused to convey it to her." In other words, that the decree of divorce in the State of Washington, which was made in consummation of equities which arose between the parties under the law of Washington, was "evidence of her right to the legal title of at least as much weight and value as a contract in writing, reciting the payment of the consideration for the land, would be."

The defendant, on the other hand, contends, as we gather from his petition for a rehearing in the Supreme Court of the State and from the opinions of the court, that "the Washington court had neither power nor jurisdiction to effect in the least, either legally or equitably," lands situated in Nebraska. And contends further that by the provision of ch. 25, 276 Comp. St. 1901, Neb., a court had no jurisdiction to award the real estate of the husband to the wife in fee as alimony, and a decree in so far as it attempts to do so is void and subject to collateral attack. For this view are cited *Cizek* v. *Cizek*, 69 Nebraska, 797, 800; *Aldrich* v. *Steen*, 100 N. W. Rep. 311, 312.

The contentions of the parties, it will be observed, put in prominence and as controlling different propositions. Plaintiff urges the equities which arose between her and her husband, on account of their relation as husband and wife, in the State of Washington, and under the laws of that State. The defendant urges the policy of the State of Nebraska, and the inability of the court of Washington by its decree alone or the deed executed through the commissioners to convey the land situate in Nebraska. To the defendant's view the Supreme Court of the State finally gave its assent, as we have seen.

In considering these propositions we must start with a concession of jurisdiction in the Washington court over both the parties and the subject-matter. Jurisdiction in that court is the first essential, but the ultimate question is, What is the effect of the decree upon the land and of the deed executed under it? The Supreme Court of the State concedes, as we under-

stand its opinion, the jurisdiction in the Washington court to render the decree. The court said (75 Nebraska, 104, 128):

"We think there can be no doubt that where a court of chancery has by its decree ordered and directed persons properly within its jurisdiction to do or refrain from doing a certain act, it may compel obedience to this decree by appropriate proceedings, and that any action taken by reason of such compulsion is valid and effectual wherever it may be assailed. In the instant case, if Fall had obeyed the order of the Washington court and made a deed of conveyance to his wife of the Nebraska land, even under the threat of contempt proceedings, or after duress by imprisonment, the title thereby conveyed to Mrs. Fall would have been of equal weight and dignity with that which he himself possessed at the time of the execution of the deed."

But Fall, not having executed a deed, the court's conclusion was, to quote its language, that "neither the decree nor the commissioner's deed conferred any right or title upon her." This conclusion was deduced, not only from the absence of power generally of the courts of one State over lands situate in another, but also from the laws of Nebraska providing for the disposition of real estate in divorce proceedings. The court said (75 Nebraska, 133):

"Under the laws of this State the courts have no power or jurisdiction in a divorce proceeding, except as derived from the statute providing for such actions, and in such an action have no power or jurisdiction to divide or apportion the real estate of the parties. *Nygren* v. *Nygren*, 42 Nebraska, 408; *Brotherton* v. *Brotherton*, 15 N. W. Rep. 347; *Cizek* v. *Cizek*, 69 Nebraska, 797; *Aldrich* v. *Steen*, 100 N. W. Rep. 311. In *Cizek* v. *Cizek*, Cizek brought an action for divorce and his wife filed a cross bill and asked for alimony. The court dismissed the husband's bill, found in favor of the wife, and, by stipulation of the parties, set off to the wife the homestead and ordered her to execute to the husband a mortgage thereon, thus endeavoring to make an equitable division of the property.

Afterwards in a contest arising between the parties as to the right of possession of the property, the decree was pleaded as a source of title in the wife, but it was held that that portion of the decree which set off the homestead to the wife was absolutely void and subject to collateral attack, for the reason that no jurisdiction was given to the District Court in a divorce proceeding to award the husband's real estate to the wife in fee as alimony. The courts of this State in divorce proceedings must look for their authority to the statute, and so far as they attempt to act in excess of the powers therein granted their action is void and subject to collateral attack. A judgment or decree of the nature of the Washington decree, so far as affects the real estate, if rendered by the courts of this State would be void.

\* \* \* \* \* \* \* \*

"The decree is inoperative to affect the title to the Nebraska land and is given no binding force or effect so far as the courts of this State are concerned, by the provisions of the Constitution of the United States with reference to full faith and credit. Since the decree upon which the plaintiff bases her right to recover did not affect the title to the land it remained in E. W. Fall until divested by operation of law or by his voluntary act. He has parted with it to Elizabeth Eastin and whether any consideration was ever paid for it or not is immaterial so far as the plaintiff is concerned, for she is in no position to question the transaction, whatever a creditor of Fall might be able to do."

It is somewhat difficult to state precisely and succinctly wherein plaintiff disagrees with the conclusions of the Supreme Court. Counsel says:

"It is not claimed that the Washington court could create an equity in lands in Nebraska by any finding or decree it might make, and thus bind the courts of a sister State; but it is claimed that where rights and equities already exist, the parties being within the jurisdiction of the court, it can divide them and apportion them by a judgment or decree which

would be conclusive upon the parties in any subsequent proceeding in a court having jurisdiction of the lands, for the purpose of quieting the title in the equitable owner."

If we may regard this as not expressing a complete opposition to the views of the Supreme Court, we must at least treat it as contradicting their fundamental principle, that is, that the decree as such has no extraterritorial operation.

The territorial limitation of the jurisdiction of courts of a State over property in another State has a limited exception in the jurisdiction of a court of equity, but it is an exception well defined. A court of equity having authority to act upon the person may indirectly act upon real estate in another State, through the instrumentality of this authority over the person. Whatever it may do through the party it may do to give effect to its decree respecting property; whether it goes to the entire disposition of it or only to effect it with liens or burdens. Story on Conflict of Laws, § 544. In *French, Trustee,* v. *Hay,* 22 Wall. 250, 252, this court said that a court of equity having jurisdiction *in personam* has power to require a defendant "to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory." The extent of this power this court has also defined. *Watts et al.* v. *Waddle et al.,* 6 Pet. 389, has features like the case at bar. The suit was for the specific performance of a contract for the conveyance of land. It became necessary to pass upon the effect of a decree requiring the conveyance of the lands concerned. The decree appointed a commissioner under a statute of the State to make the conveyance in case the defendants or any of them failed to make the conveyance. This court said: "A decree cannot operate beyond the State in which the jurisdiction is exercised. It is not in the power of one State to prescribe the mode by which real property shall be conveyed in another. This principle is too clear to admit of doubt." In reply to the contention that the deed of the commissioner was a legal conveyance, it was said: "The deed executed by the commissioner in this case

must be considered as forming part of the proceedings in the court of chancery, and no greater effect can be given to it than if the decree itself, by statute, was made to operate as a conveyance in Kentucky as it does in Ohio."

In *Watkins* v. *Holman et al.*, 16 Pet. 25, 57, passing on a decree made by the Supreme Court in Massachusetts by virtue of a statute of that State, it was said:

"No principle is better established than that the disposition of real estate, whether by deed, descent or by any other mode, must be governed by the law of the State where the land is situated."

And further:

"A court of chancery, acting *in personam*, may well decree the conveyance of land in any other State, and may well enforce its decree by process against the defendant. But neither the decree itself nor any conveyance under it, except by the person in whom the title is vested, can operate beyond the jurisdiction of the court."

See, also, *Massie* v. *Watts*, 6 Cranch, 148, and *Miller* v. *Sherry*, 2 Wall. 237, 248, 249.

In *Corbett* v. *Nutt*, 10 Wall. 464, 475, the doctrine was repeated that a court of equity acting upon the person of the defendant may decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the execution of the decree by process against the defendant, but, it was said: "Neither its decree nor any conveyance under it, except by the party in whom the title is vested, is of any efficacy beyond the jurisdiction of the court." This, the court declared, was familiar law, citing *Watkins* v. *Holman, supra*. See, also, *Brine* v. *Insurance Company*, 96 U. S. 627, 635; *Phelps* v. *McDonald*, 99 U. S. 308.

In *Boone* v. *Chiles*, 10 Pet. 177, 245, it is said that a commissioner is in no sense an agent of the party, but is an officer of the court, and acts strictly under its authority.

Later cases assert the same doctrine. In *Carpenter* v. *Strange*. 141 U. S. 87, 105, a court of New York had declared a

deed for real estate situate in Tennessee null and void. This court said to concede such power would be " to attribute to that decree the force and effect of a judgment *in rem* by a court having no jurisdiction over the *res*." And, explaining the power of a court of equity, said that " by means of its power over the person of a party a court of equity may in a proper case compel him to act in relation to property not within the jurisdiction, its decree does not operate directly upon the property nor affect the title, but it is made effectual through the coercion of the defendant, as, for instance, by directing a ' deed to be executed or canceled by or on behalf of the party. The court has no inherent power by' the mere force of its decree to annul a deed or to establish a title. *Hart* v. *Sansom*, 110 U. S. 151, 155."

Whether the doctrine that a decree of a court rendered in consummation of equities, or the deed of a master under it, will not convey title, and that the deed of a party coerced by the decree will have such effect is illogical or inconsequent, we need not inquire nor consider whether the other view would not more completely fulfill the Constitution of the United States, and that whatever may be done between the parties in one State may be adjudged to be done by the courts of another, and that the decree might be regarded to have the same legal effect as the act of the party which was ordered to be done. The policy of a State would not be violated. Besides, this court found no impediment in the policy of a State in the way of enforcing, under the due faith and credit clause of the Constitution of the United States, a judgment obtained in Missouri, sued upon in Mississippi. The defense was that the cause of action arose in Mississippi and was one that the courts of the State, under its laws, were forbidden to enforce. The defense was adjudged good by the Supreme Court of Mississippi and its judgment was reversed by this court. *Fauntleroy* v. *Lum*, 210 U. S. 230.

In *Hart* v. *Sansom*, *supra*, it was directly recognized that it was within the power of the State in which the land lies to

provide, by statute, that if the defendant is not found within the jurisdiction, or refuses to perform, performance in his behalf may be had by a trustee appointed by the court for that purpose.

In *Dull* v. *Blackman*, 169 U. S. 243, 246, 247, while recognizing that litigation in regard to the title of land belongs to the courts of the State where the land is so located, it was said, "although if all the parties interested in the land were brought personally before a court of another State, its decree would be conclusive upon them, and thus, in effect, determine the title."

But, however plausibly the contrary view may be sustained, we think that the doctrine that the court, not having jurisdiction of the *res*, cannot affect it by its decree, nor by a deed made by a master in accordance with the decree, is firmly established. The embarrassment which sometimes results from it has been obviated by legislation in many States. In some States the decree is made to operate *per se* as a source of title. This operation is given a decree in Nebraska. In other States power is given to certain officers to carry the decree into effect. Such power is given in Washington to commissioners appointed by the court. It was in pursuance of this power that the deed in the suit at bar was executed. But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that when the subject-matter of a suit in a court of equity is within another State or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted. In such case the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment or sequestration. On the other hand, where the suit is

strictly local, the subject-matter is specific property, and the relief when granted is such that it *must* act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject-matter is situated. 3 Pomeroy's Equity, §§ 1317, 1318, and notes.

This doctrine is entirely consistent with the provision of the Constitution of the United States, which requires a judgment in any State to be given full faith and credit in the courts of every other State. This provision does not extend the jurisdiction of the courts of one State to property situated in another, but only makes the judgment rendered conclusive on the merits of the claim or subject-matter of the suit. "It does not carry with it into another State the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another State it must become a judgment there; and can only be executed in the latter as its laws permit." *M'Elmoyle* v. *Cohen*, 13 Pet. 312.

Plaintiff seems to contend for a greater efficacy for a decree in equity affecting real property than is given to a judgment at law for the recovery of money simply. The case of *Burnley* v. *Stevenson*, 24 Ohio St. 474, 478, in a sense sustains her. The action was brought in one of the courts of Ohio for the recovery of the possession of certain lands. The defendant set up in defense a conveyance for the same lands made by a master commissioner, in accordance with a decree of a court in Kentucky in a suit for specific performance of a contract concerning the lands. The defendant in *Burnley* v. *Stevenson* claimed title under the master's deed. The court declared the principle that a court of equity, having the parties before it, could enforce specific performance of a contract for lands situate in another jurisdiction by compelling the parties to make a conveyance of them, but said that it did not follow that the court could "make its own decree to operate as such conveyance." And it was decided that the decree could not have such effect, and as it could not, it was "clear that a deed exe-

cuted by a master, under the direction of the court," could "have no greater effect." *Watts* v. *Waddle, supra,* and *Page* v. *McKee,* 3 Bush, 135, were cited, and the master's deed, the court said, "must, therefore, be regarded as a nullity." But the court decided that the "decree was *in personam* and bound. the consciences of those against whom it was rendered." It became, it was in effect said, a record of the equities which preceded it, and of the fact that it had become, and it was the duty of the defendants in the suit to convey the legal title to the plaintiff. This duty, it was further said, could have been enforced "by attachment as for contempt; and the fact that the conveyance was not made in pursuance of the order does not affect the validity of the decree, in so far as it determined the equitable rights of the parties in the land in controversy. In our judgment the parties, and those claiming under them with notice, are still bound thereby."

The court proceeded to say that it might be admitted that the decree would not constitute a good defense at law, but that it was a good defense in equity, as under the code of Ohio equitable as well as legal defenses might be set up in an action for the recovery of land, and from this, and the other propositions that were expressed, concluded that as the decree had the effect in Kentucky of determining the equities of the parties to the land in Ohio, the courts of the latter State "must accord to it the same effect" in obedience to the due faith and credit clause of the Constitution of the United States. "True," the court observed, " the courts of this State cannot enforce the performance of that decree, by compelling the conveyance through its process of attachment; but when pleaded in our courts as a cause of action, or as a ground of defense, it must be regarded as conclusive of all the rights and equities which were adjudicated and settled therein, unless it be impeached for fraud. See cases *supra;* also *Davis* v. *Headley,* 22 N. J. Eq. 115; *Brown* v. *L. & D. R. R. Co.,* 2 Beasley Eq. (N. J.) 191; *Dobson* v. *Pierce,* 2 Kernan, 156; *United States Bank* v. *Bank of Baltimore,* 7 Gill, 415."

It may be doubted if the cases cited by the learned court sustain its conclusion. But we will not stop to review them or to trace their accordance with or their distinction from the cases which we have cited. The latter certainly accord with the weight of authority. There is, however, much temptation in the facts of this case to follow the ruling of the Supreme Court of Ohio. As we have seen, the husband of the plaintiff brought suit against her in Washington for divorce, and, attempting to avail himself of the laws of Washington, prayed also that the land now in controversy be awarded to him. She appeared in the action, and, submitting to the jurisdiction which he had invoked, made counter-charges and prayers for relief. She established her charges, she was granted a divorce, and the land decreed to her. He, then, to defeat the decree and in fraud of her rights, conveyed the land to the defendant in this suit. This is the finding of the trial court. It is not questioned by the Supreme Court, but as the ruling of the latter court, that the decree in Washington gave no such equities as could be recognized in Nebraska as justifying an action to quiet title does not offend the Constitution of the United States, we are constrained to affirm its judgment.

*So ordered.*

Mr. Justice Harlan and Mr. Justice Brewer dissent.

Mr. Justice Holmes, concurring specially.

I am not prepared to dissent from the judgment of the court, but my reasons are different from those that have been stated.

The real question concerns the effect of the Washington decree. As between the parties to it that decree established in Washington a personal obligation of the husband to convey to his former wife. A personal obligation goes with the person. If the husband had made a contract, valid by the law of Washington, to do the same thing, I think there is no doubt that the contract would have been binding in Nebraska. *Ex parte*

*Pollard,* 4 Deacon, 27, 40; *Polson* v. *Stewart,* 167 Massachusetts, 211.  So I conceive that a Washington decree for the specific performance of such a contract would be entitled to full faith and credit as between the parties in Nebraska.  But it does not matter to its constitutional effect what the ground of the decree may be, whether a contract or something else. *Fauntleroy* v. *Lum,* 210 U. S. 230.  (In this case it may have been that the wife contributed equally to the accumulation of the property, and so had an equitable claim.)  A personal decree is equally within the jurisdiction of a court having the person within its power, whatever its ground and whatever it orders the defendant to do.  Therefore I think that this decree was entitled to full faith and credit in Nebraska.

But the Nebraska court carefully avoids saying that the decree would not be binding between the original parties had the husband been before the court.  The ground on which it goes is that to allow the judgment to affect the conscience of purchasers would be giving it an effect *in rem.*  It treats the case as standing on the same footing as that of an innocent purchaser.  Now if the court saw fit to deny the effect of a judgment upon privies in title, or if it considered the defendant an innocent purchaser, I do not see what we have to do with its decision, however wrong.  I do not see why it is not within the power of the State to do away with equity or with the equitable doctrine as to purchasers with notice if it sees fit.  Still less do I see how a mistake as to notice could give us jurisdiction.  If the judgment binds the defendant it is not by its own operation, even with the Constitution behind it, but by the obligation imposed by equity upon a purchaser with notice.  The ground of decision below was that there was no such obligation.  The decision, even if wrong, did not deny to the Washington decree its full effect.  *Bagley* v. *General Fire Extinguisher Co.,* 212 U. S. 477, 480.