[Civil No. 1135.  Filed April 2, 1910.]

[108 Pac. 471.]

BROOKLYN MINING & MILLING COMPANY, a Corporation, Plaintiff and Appellant, v. CHARLES C. MILLER, ADA M. MILLER, CHARLES C. MILLER No. 2, GEORGE MILLER, a Minor, by CHARLES C. MILLER No. 2, His Guardian ad Litem, and GEO. A. LASBURY, Defendants and Appellees.

1. JUDGMENT—ISSUES.—Where a portion of a complaint for specific performance, relating to an accounting, is dismissed 'without prejudice, the court has no power in making an interlocutory decree on the rest of the complaint to make any decision as to the right of plaintiff to an accounting.

2. SPECIFIC PERFORMANCE—COMPROMISE AGREEMENT—ACTS OF COMPLAINANT.—Under a compromise agreement providing that several suits between the parties to an agreement should be dismissed, and a conditional sale of the property theretofore entered into by defendants with another consummated within a certain time, complainant in a suit to specifically enforce the compromise agreement has no standing in equity, where he refused to dismiss his suit against defendants as agreed, thereby causing a cloud on the title to the property, and preventing the consummation of the conditional sale at the time named.

3. APPEAL AND ERROR — HARMLESS ERROR — SPECIFIC PERFORMANCE—GRANTING UNAUTHORIZED RELIEF.—Complainant in a suit for specific performance of a compromise agreement was not, at time of trial, entitled to relief because of his failure to, in good faith, dismiss a suit against defendants as agreed, whereby the performance by defendants of their agreement to consummate a conditional sale of property at a certain time could not be carried out. The court, instead of dismissing the complaint for want of equity, entered an interlocutory decree granting complainant the relief sought, on condition that he consent to a sale of the land unhampered by the pending litigation, etc. *Held,* that where complainant did not consent, it is not prejudiced by the action of the court, though such action was beyond its power, since, by failure to consent, the case was left where the record showed that it should be; that is, dismissed for want of equity.

4. STIPULATIONS—ESTOPPEL BY.—Where, on a motion for continuance, it is stipulated that the continuance would be granted if a judgment rendered in a former pending suit would not be pleaded in the suit as a bar, the stipulation estops the parties from pleading such judgment.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for Yavapai County. Richard E. Sloan, Judge. Modified and affirmed.

The facts are stated in the opinion.

John J. Hawkins, Thomas C. Job and Frank S. Howell, for Appellant.

"Where a contract for the exchange of land was not to be complete until the parties were satisfied as to the title, the deposit of a deed with a third person by one party for delivery to the other, 'when everything is all right and perfected,' does not constitute a delivery in escrow." *Miller* v. *Sears,* 91 Cal. 282, 25 Am. St. Rep. 176, 27 Pac. 589; *Fitch* v. *Bunch,* 30 Cal. 208–212; *Blight* v. *Schneck,* 10 Pa. 285, 51 Am. Dec. 478. A necessary element of an escrow is that, when the instrument is placed with a depository, it should be intended to pass beyond the control of the grantor for all time. *Wittenbrock* v. *Cass,* 110 Cal. 1, 42 Pac. 300. We claim that the only condition precedent to the consummation of the sale to the United Verde, all others being concurrent conditions or conditions that could be performed any time before the decree was entered by this court. Time was not the essence of the covenants to dismiss the said suit. Everything depended upon the consummation of the sale to the United Verde—the dismissal of the suits and the carrying out of all other provisions of the contract. It is a well-known rule that where time is not of the essence, the failure of a party to perform one of the considerations will not defend specific enforcement. *Whiteman* v. *Perkins,* 56 Neb. 181, 76 N. W. 547; *Kellogg* v. *Lavender,* 9 Neb. 418, 2 N. W. 748; *Bradley & Co.* v. *Union Pac. R. R. Co.,* 76 Neb. 172, 107 N. W. 238; *Jewett* v. *Black,* 60 Neb. 173, 82 N. W. 375. Plaintiff was under no obligation to perform its part of the contract until defendants were ready to perform their part. They could put plaintiff in default only by tendering performance themselves. Each party had the right to compel the other party to dismiss the suit the moment the contract in litigation was executed and delivered.

Norris, Ross & Smith and Reese M. Ling, for Appellees.

Appellant's assignments of error are wholly insufficient. The particular rulings complained of and the place where they appear in the record are required to be pointed out. Rule 7, Sup. Ct. Rules; *Prescott Nat. Bank* v. *Head,* 11 Ariz. 213, 90 Pac. 328; *Daniel* v. *Gallagher,* 11 Ariz. 151, 89 Pac. 413; *Liberty Mining & Smelting Co.* v. *Geddes,* 11 Ariz. 54, 90 Pac. 332.

DOAN, J.—This was an action brought in February, 1908, by the appellant against the appellees herein in the district court of Yavapai county for the specific performance of a contract made between the several parties on August 27, 1907. The case was tried to the court in March, 1909, and on April 24, 1909, the judgment was rendered against the plaintiff, from which this appeal is taken.

The record is voluminous. The facts in the case are as follows: Prior to December, 1906, the Brooklyn Mining and Milling Company, a corporation, was the owner of the Brooklyn mining claim in Yavapai county, Arizona. Charles W. Pearsall was then, and at all times since has been, president of that corporation and a stockholder therein. Alonzo V. Miller, George B. Lasbury, and Charles C. Miller were also stockholders in said company, and prior to December, 1906, had located in their own name, together with one Thomas H. Ensor as colocator, three mining claims adjoining the Brooklyn claim, known as the "West Brooklyn," the "East Brooklyn," and the "South Brooklyn" claims. In August, 1906, Lasbury acquired Ensor's interest in the three claims by deed recorded September 18, 1906, after which date Alonzo V. Miller, George B. Lasbury, and Charles C. Miller were the record owners of said claims. In September, 1906, Miller and Lasbury gave an option to the United Verde Copper Company for the purchase of the West Brooklyn claim and the White Rock claim (which does not figure in this suit), for the sum of $20,000. The term of this option does not definitely appear, but it was extended at different times and kept in force up to January 1, 1908. In December, 1906, Pearsall, in behalf of himself and other stockholders, instituted a suit (No. 4541) in the district court of Yavapai county against the

Millers and Lasbury for the purpose of having it declared that the Millers and Lasbury held the title to the West, East, and South Brooklyn claims in trust for the Brooklyn company, and to require them to convey said claims to the company. An amended complaint was filed on July 7, 1907, in this action naming the Brooklyn Mining Company as plaintiff. In May, 1907, Charles C. Miller brought suit against the Brooklyn company for $5,000, claimed to be due him for work done upon the Brooklyn claim. While both suits were yet pending, a compromise agreement was made between the parties on August 27, 1907, as follows:

"Whereas, an action is now pending in the district court of Yavapai county, Arizona, entitled Brooklyn Mining & Milling Company et al. v. Charles C. Miller, Alonzo V. Miller and George B. Lasbury, which action relates to the title of the West Brooklyn, East Brooklyn and South Brooklyn mining claims located in said county and territory, and relates to an accounting for ores and minerals taken therefrom; and whereas, the said Charles C. Miller, Alonzo V. Miller and George B. Lasbury have made a conditional sale of the above-named West Brooklyn mining claim for the sum of ten thousand dollars to the United Verde Copper Company; and whereas, an action is pending in the district court of Yavapai county, Arizona, entitled Charles C. Miller v. Brooklyn Mining & Milling Company for several thousand dollars claimed to be due and owing to the said Charles C. Miller for services performed by him and Alonzo V. Miller for the said Brooklyn Mining & Milling Company; and whereas, it is the desire of the parties connected with the foregoing causes of action to settle the same, and to adjust the matters of difference between the parties in connection therewith: Therefore, in consideration of the dismissal and settlement of the foregoing causes of action it is hereby stipulated and agreed by and between the Brooklyn Mining & Milling Company and Charles C. Miller, Alonzo V. Miller and George B. Lasbury that if the sale of the West Brooklyn mining claim to the United Verde Copper Company is consummated on or before the first day of January, 1908, the said Charles C. Miller, Alonzo V. Miller and George B. Lasbury are to transfer and deliver to the said Brooklyn Mining & Milling Company one hundred and seventy-five thousand shares (175,000) of stock in said Brook-

lyn Mining & Milling Company, free and clear of all liens
and encumbrances whatsoever; it being understood that said
transfer of stock is to include all of the holdings of the said
Charles C. Miller, Alonzo V. Miller and George B. Lasbury
in the Brooklyn Mining & Milling Company, and the said
parties are to receive therefor the sum of 3 (three) cents per
share for said stock; and in addition thereto Charles C. Miller,
Alonzo V. Miller and George B. Lasbury are to pay to the
Brooklyn Mining & Milling Company the sum of eight thou-
sand, five hundred dollars ($8,500.00) out of the proceeds de-
rived from the sale of the said West Brooklyn mining claim;
in addition thereto the said Charles C. Miller, Alonzo V. Mil-
ler and George B. Lasbury are to convey all of their right,
title and interest in and to the East Brooklyn, South Brook-
lyn, North Brooklyn, Empress and Midway mining claims,
and said transfer shall contain the warranty that the assess-
ment work has been done for the year 1907 upon the Empress,
Midway and North Brooklyn, and the said Brooklyn Mining
& Milling Company shall pay the said assessment work at its
reasonable value.    The said Charles C. Miller, Alonzo V. Mil-
ler and George B. Lasbury agree to do the assessment work
for the year 1907, on the East and South Brooklyn mining
claims, and said assessment work so to be performed is to be
paid for by the Brooklyn Mining & Milling Company at its
reasonable value.    It is further stipulated and agreed by and
between the parties hereto that if for any reason the sale of
the West Brooklyn claim to the United Verde Copper Com-
pany by the said Charles C. Miller, Alonzo V. Miller and
George B. Lasbury shall not be consummated on or before
the first day of January, 1908, then the said Charles C. Miller,
Alonzo V. Miller and George B. Lasbury are to convey to the
Brooklyn Mining & Milling Company all of their right, title
and interest in and to the West Brooklyn, East Brooklyn,
South Brooklyn, North Brooklyn, Empress and Midway min-
ing claims, and the assessment work on the North Brooklyn,
Empress and Midway claims for the year 1907 is to be paid
by the said Brooklyn Mining Company at its fair and reason-
able value.    It is understood by and between the parties
hereto that the foregoing does not concede or admit any of
the allegations contained in the pleadings of said causes of
action, but the agreement is entered into for the purpose of ad-

justing the matters of difference between said parties and avoiding further costs and expenses to the parties hereto. In witness whereof, we have hereunto set our hands this 27th day of August, A. D. 1907.

"C. C. MILLER.

"A. V. MILLER.

"G. B. LASBURY.

"BROOKLYN MINING & MILLING COMPANY,

"By CHAS. W. PEARSALL, President."

On December 17, 1907, Alonzo V. Miller executed, acknowledged and delivered to Ada M. Miller a deed, conveying to her his interest in the West Brooklyn claim. On December 18, 1907, Alonzo V. Miller died, leaving a widow, Ada M. Miller, and two sons, viz., Charles C. Miller No. 2 and George M. Miller, a minor. In December, 1907, counsel for Lasbury and the Millers requested a dismissal of action No. 4541, and directed a dismissal of No. 4608 (the case of *Miller* v. *The Company*). Counsel for the company declined to dismiss the case against the Millers, and the formal dismissal of the Miller case was not entered of record until January 2, 1908. On January 2, 1908, the case of Miller against the Brooklyn company, No. 4608, was dismissed. Consummation of the sale of the West Brooklyn to the United Verde Company was claimed, and a tender of performance of the obligation of the Millers and Lasbury, under the agreement of August 27, 1907, was made. This tender was refused by counsel for the appellant on the ground that it did not fully comply with the terms of the agreement, and counsel again declined to dismiss the suit No. 4541. On January 28, 1908, the Brooklyn company brought suit in the district court of Douglas county, Nebraska, against Charles C. Miller, George B. Lasbury, and the survivors of Alonzo V. Miller, viz., Ada M. Miller, Charles C. Miller No. 2, and George M. Miller, a minor, for the specific performance of the agreement of August 27, 1907, and George B. Lasbury and Ada M. Miller were personally served with process in Nebraska. On February 15, 1908, the Brooklyn company dismissed action No. 4541 involving the title to the West Brooklyn claim, being the action, the dismissal of which was stipulated in the agreement of August 27, 1907, and on the same date, immediately thereafter, filed another action, No. 4923, of the same gen-

eral character.   On February 18th, at 9 o'clock A. M., the
Brooklyn company dismissed action No. 4923, and on that
date, at 9:10 A. M., filed the case at bar, No. 4927.   The ac-
tions numbered 4541—in which a *lis pendens* was filed—4923
and 4927, and the suit brought in Nebraska on January 28,
1908, all involved the title to the West Brooklyn claim.   On
December 23, 1908, the case at bar came on for trial in
Yavapai county, and the plaintiff asked for a continuance.
This was contested by the defendants, and the pendency of
the action in Nebraska urged by them as ground for a trial at
that time.   It was then stipulated that if the case was con-
tinued no judgment which might be secured in Douglas county,
Nebraska, should be pleaded in this action.   Thereupon the
continuance was granted on the motion and at the cost of the
Brooklyn Mining and Milling Company, plaintiff.   The
Nebraska case was tried on February 8, 1909, and decided in
favor of the company.   The Nebraska court held that the
sale of the West Brooklyn had not been consummated as pro-
vided for in the agreement of August 27th, and decreed that
Charles C. Miller and Ada M. Miller specifically perform the
obligations devolving upon them under the compromise agree-
ment by reason of the nonconsummation of the said sale, and
decreed that Charles C. Miller and Ada Miller convey to the
Brooklyn company the West Brooklyn claim, and the five
other claims named in the compromise agreement, and in de-
fault of their so doing a master be appointed by the court to
make such conveyance.   No parties to the Nebraska suit were
served with process or appeared except Ada M. Miller and
Lasbury.   The master appointed by the court thereafter exe-
cuted and delivered a conveyance of the claims mentioned to
the Brooklyn company.

On March 25, 1909, the case at bar came on for trial in the
district court of Yavapai county, and on April 24th judgment
was rendered therein.   Immediately prior to the trial of the
case, the plaintiff filed a reply to the amended answer and
cross-complaint, in which reply it pleaded the judgment and
decree of the Nebraska court and the conveyance by the com-
missioner thereunder.   In a written decision filed on April
24th the court found that the sale of the West Brooklyn to
the United Verde by the defendants had not in fact been
consummated on or before January 1, 1908, but that the fail-

ure to consummate such sale was caused by the failure and
refusal of the plaintiff to dismiss the action (No. 4541)
brought by the plaintiff against the defendants in December,
1906, which involved the title to the West Brooklyn claim,
and the dismissal of which was made obligatory upon the
plaintiff by the terms of the agreement. The court found
from the record that this suit was not dismissed until Febru-
ary 15, 1908, and that another similar suit was brought by
the plaintiff before an opportunity was afforded the defend-
ants to consummate said sale; that the defendants, prior to
January 1, 1908, endeavored to effect the sale to the United
Verde, and that the pending litigation prevented such sale;
that the United Verde had ever since been willing to make
the purchase at the price of $10,000 if pending litigation was
dismissed, and a clear title could thereby be given them. The
court then held that the plaintiff was not then in a position
to enforce specific performance on the part of the defendants
for the reason that it was itself at fault in not dismissing the
litigation, thus removing the obstacle to the negotiation and
consummation of the sale. The court further held that as all
the parties were before the court, and the agreement was
regarded by the parties as still in force, that he would not
dismiss the action, but would grant to the defendants reason-
able time to consummate the sale under the terms of the
agreement. The judgment of the court therefore was that
an interlocutory order and decree be entered, giving the de-
fendants ninety days from that date to make the sale and
comply with the other terms of the agreement. Thereupon
the court caused an interlocutory decree to be entered as fol-
lows:

"This cause came on regularly to be heard on the 25th day
of March, 1909, plaintiff appearing by John J. Hawkins and
T. C. Job, Esqs., its attorneys, and F. S. Howell of counsel,
and defendants, Charles C. Miller, Ada M. Miller, Charles C.
Miller No. 2 and George Miller, a minor, by Charles C. Miller
No. 2, his guardian *ad litem,* appearing by Reese M. Ling,
Esq., and Messrs. Norris & Ross, their attorneys. A jury
being expressly waived by both parties, the cause was tried
to the court upon plaintiff's amended and supplemental com-
plaint, the amended answer and cross-complaint of defendants
Charles C. Miller, Ada M. Miller, Charles C. Miller No. 2 and

Charles C. Miller No. 2 as guardian *ad litem* of George Miller, a minor, and plaintiff's reply to said amended answer and cross-complaint, together with said defendants' motion to strike and replication addressed to said reply. Evidence both oral and documentary was introduced on behalf of the respective parties, and the parties rested, and the cause was submitted to the court for its decision and judgment. Thereafter it was argued to the court by counsel of the respective parties through written briefs. The court having considered the evidence in said cause, the argument of counsel, and the principles of law and equity applicable thereto, and being fully advised in the premises, on the 24th day of April, 1909, made and filed its written decision herein, and orders that a judgment and decree be entered in accordance therewith: Now, therefore, for the purpose of giving defendants an opportunity to consummate the sale of the 'West Brooklyn' mining claim to the United Verde Copper Company, or make a binding contract for such sale free and clear of all claims and litigations on the part of plaintiff touching or questioning said title, and in accordance with said written decision and for the purpose of fully determining the rights of the parties hereto under the contract sued upon, an alternative decree is hereby made and entered herein as follows, to wit:

"(1) That within thirty (30) days from the date hereof plaintiff shall file herein its written consent that this decree conditional upon a sale of the 'West Brooklyn' mining claim to the United Verde Copper Company as hereinafter provided shall become final, irrevocable and nonappealable and consenting that said defendants within the time hereinafter stated may make a sale or a binding contract therefor of the 'West Brooklyn' mining claim to the United Verde Copper Company free and clear of all claims and litigations on the part of plaintiff questioning or affecting the title to said claim.

"(2) That if plaintiff shall fail, or refuse to file herein within said period of thirty days from the date hereof its written consent and waiver as provided herein, then and in such event plaintiff's action herein shall stand dismissed as of this date, and plaintiff shall take nothing thereby.

"(3) Ordered, adjudged and decreed that if within ninety days from the date hereof said defendants shall consummate

XIII Ariz.—15

or make a binding contract for the sale of 'West Brooklyn' mining claim to the United Verde Copper Company, and shall deliver and pay over or tender to plaintiff herein the money, stocks, deed and proof of assessment work which is provided by the contract of August 27th, 1907, shall be paid over and delivered by defendants to plaintiff, then and thereupon this decree shall forthwith become final, irrevocable and nonappealable as of this date, and plaintiff shall be forever barred and estopped from claiming any right, title or interest in or to said 'West Brooklyn' mining claim.

"(4) Ordered, adjudged and decreed that if plaintiff within the period aforesaid shall file its said written consent and waiver as above provided, and defendants shall fail to make such sale or binding contract therefor to the United Verde Copper Company, and to pay over and deliver or tender the money, stocks, deed and proof of assessment work aforesaid within the said period of ninety days, then and thereupon defendants shall forthwith execute and deliver to plaintiff a valid and sufficient deed conveying to plaintiff all their right, title and interest in and to the 'West Brooklyn' mining claim as mentioned and provided in said agreement of August 27th, 1907, and said agreement shall be fully carried out by all the parties hereto.

"(5) Ordered, adjudged and decreed that plaintiff is not entitled to have or recover anything hereinunder, by virtue or by reason of that certain decree described in plaintiff's reply to defendants' cross-complaint herein rendered by the district court of Douglas county, state of Nebraska, that the commissioner's deed made under and pursuant to said decree is void and of no force or effect, and that said deed does not constitute a cloud upon the title of the 'West Brooklyn' mining claim.

"(6) Ordered, adjudged and decreed that plaintiff is not in any event entitled to an accounting herein, or to have or recover in this action on account of silica heretofore sold or shipped by defendants or any of them from the 'West Brooklyn' mining claim, and defendants shall have and recover from plaintiff their costs herein taxed at $37.35.

"Done in open court this 24th day of April, 1909.

"RICHARD E. SLOAN, Judge."

The plaintiff failed and refused to file within thirty days thereafter its consent as provided in paragraphs 1, 3, and 4 of the alternative decree. The failure and refusal of plaintiff to file its consent as provided for in the decree renders the decree as set forth in paragraphs 1, 3, 4, 5, and 6 inoperative, and leaves as a final and substantive decree of the court only paragraph 2 dismissing the plaintiff's action, which would naturally carry with it the costs in the case.

The denial of an accounting in paragraph 6 was inadvertently ordered, for the dismissal without prejudice on March 26th of that part of the complaint which called for an accounting would prevent the court from an adjudication of that question in this case.

In presenting its appeal, appellant presents some twenty-six assignments of error. Assignments 1, 2, 3, 4, 5, 10, 11, and 12 are grouped together by the appellant, and may be so considered by us, and are to the effect that the decree of the court is not supported by sufficient evidence, but is contrary to law, equity, and the uncontroverted evidence under the issues as presented and joined. Appellant argues in support of this contention that it was entitled to a decree for specific performance compelling defendants to convey to it the West Brooklyn and the other five claims, by reason of their failure to consummate prior to January 1, 1908, the sale of the West Brooklyn to the United Verde, and make the stipulated tender of money and stocks that should follow said sale. It is conceded that the sale of the West Brooklyn to the United Verde was not consummated prior to January 1, 1908. It is likewise conceded that the action No. 4541 entitled, "The Brooklyn Mining & Milling Company v. Charles C. Miller, Alonzo V. Miller and George B. Lasbury," which related to the title of the West Brooklyn, was not dismissed prior to January 1, 1908. The appellant urges that no dismissal of this suit was required in any event by reason of the defendants' failure to carry out their agreement.

We cannot agree with this contention. The trial court found, and we think properly, that the failure by appellant to dismiss the action indicated in the contract prevented appellees from consummating a sale to the United Verde company within the period allowed them by the contract. Certainly it would be inequitable to permit appellant so to

take advantage of its own wrong. Therefore, upon the state of facts existing at the time of trial, appellant was not entitled to specific performance. But the trial court conceiving that equity might be done by fixing a period within which appellees, unhampered by pending litigation, might effect a sale to the United Verde company, undertook to secure to appellant relief to which, upon the record at the trial, it was not entitled. If we concede appellant's view that the court's action was beyond its power, and in effect undertook to make a new contract for the parties, still we are unable to see how appellant was prejudiced thereby. The failure to accept the terms offered by the court leaves the appellant in the position where strictly the record puts it—with its complaint dismissed for want of equity.

The appellant groups the assignments of error 6, 7, and 19, and, under them, argues that the trial court erred in not giving force and effect to the judgment of the Nebraska court. The effect of the Nebraska decree presents an interesting question. The decision of the United States supreme court in *Fall* v. *Eastin,* 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A., N. S., 924, would indicate that the ruling of the lower court on that subject was correct, but this question was only raised in this case by the reply of the appellant to the cross-complaint of the appellees, and as the lower court gave no relief to appellees on such cross-complaint, and dismissed the action for specific performance on other grounds, that feature of the case was never reached. We do not think that the point here attempted to be made will avail the appellant, for the reason that the continuance in December, 1908, was granted to the appellant on the stipulation that, if the case were continued, no judgment that might be secured in Douglas county, Nebraska, should be pleaded in this case. This estops the appellant from pleading the Nebraska judgment, and sustains the court's ruling that it was "not entitled to recover anything hereinunder, by virtue or by reason of" such decree. The appellant does not contend that the commissioner's deed is valid or of any effect in this jurisdiction.

The decree that the commissioner's deed is void, and does not constitute a cloud upon the title to the West Brooklyn claim, while sound as a declaration of law, was not necessary

to the determination of the question finally decided by the court, and for that reason has no place in the decree.

The record sustaining the trial court in dismissing the action, the judgment of the lower court is affirmed. For the full protection of the appellant from any prejudicial effect of any portion of the decree other than that of dismissal, the judgment of this court is that the judgment and decree of the lower court be modified to read: "It is ordered, adjudged, and decreed that plaintiff's action shall stand dismissed, and plaintiff shall take nothing thereby, and that defendants shall have and recover from the plaintiff their costs herein, taxed at $37.35." As so modified, the judgment of the lower court is affirmed.

KENT, C. J., and CAMPBELL, LEWIS, and DOE, JJ., concur.