## SHARP v. SHARP.

No. 7334—Opinion Filed June 27, 1916.

Rehearing Denied Feb. 20, 1917.

(166 Pac. 175.)

**Divorce—Foreign Judgment—Conclusiveness —Decree of Circuit Court of Oregon.**

A decree of a circuit court of the state of Oregon, in a suit for divorce in which both parties appeared, which attempts to settle the defendant's equitable rights to lands in Oklahoma, in so far as such decree relates to the lands in Oklahoma is coram non judice and void and as such is not res adjudicata of the same claim in an action in Oklahoma between the same parties and involving the same land.

(Syllabus by Burford, C.)

Error from Superior Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action in ejectment by Landis Sharp against Jennie Sharp. Judgment for plaintiff, and defendant appeals. Reversed.

Twyford & Smith, for plaintiff in error.

Harris, Nowlin & Singleton, for defendant in error.

Opinion by BURFORD, C. This was an action in ejectment instituted in the superior court of Oklahoma county, to recover the possession of lot 26, block 5, Orchard Park addition to Oklahoma City.

The pleadings underwent various changes and amendments, but the essential facts relied upon are as follows: Plaintiff claimed title to the lot in question through a deed from one John Clardy, executed December 13, 1913, and duly recorded. He also claimed that the circuit court of Umatilla county, Or., in an action of divorce in which Landis Sharp was plaintiff and Jennie Sharp was defendant, in which action Jennie Sharp had appeared and filed her answer alleging that the property in question, as well as the other property, had been bought with their joint earnings, and that in equity the Oklahoma property belonged to her, had decreed that the property here involved was the sole property of the plaintiff, Landis Sharp. The defendant, upon the other hand, claimed that the decree of the Oregon court was not binding; that it was made without jurisdiction

of the subject-matter, in so far as it related to the lots in question; that the property involved had been purchased by Landis Sharp with the money of the defendant, and that she was the owner of the equitable title thereto and entitled to have Landis Sharp declared a trustee of such property for her benefit. Upon the trial the plaintiff introduced his deed from John Clardy in evidence, and also introduced the record of the Oregon proceeding. It appears that in the case there the defendant, Jennie Sharp, appeared and set up somewhat similar facts in relation to the advancement of the money for the purchase of the Oklahoma property to those pleaded in the instant case. Landis Sharp, the plaintiff in that suit, replied, denying the facts set up in defendant's answer, and sought to have the court determine that he was—

"vested with the exclusive title, legal and equitable, of said property, and that the defendant has not and shall not have, in law or in equity, any right, title or interest, or estate therein, and that all right, title, interest, or estate by her claimed therein be by the decree of this court forever terminated and canceled."

The decree of the Oregon court is in part as follows:

"That plaintiff, Landis Sharp, is the owner of all of the real property in the pleadings in this suit filed particularly described, to wit [description of land in Oregon], and all of lot numbered 26, in block numbered 5 in Orchard Park addition to Oklahoma City in the state of Oklahoma, free from all right, title, interest, estate, and claim forever, of defendant, Jennie Sharp; that the defendant, Jennie Sharp, is not entitled to and shall not have any claim, right, title, interest or estate in or to any property, real or personal, owned by the plaintiff, and whatever property, real or personal, he owns is hereby declared and decreed to be his absolutely and free from any claim, interest or estate of the defendant."

After introducing these records the plaintiff rested, whereupon the defendant sought to prove that the land in question was bought with money belonging to her. This proof was by the trial court refused. She then sought to prove that the decree of the Oregon court was obtained by fraud, which proof was likewise refused.

The principal questions arise upon the contentions that the circuit court of Umatilla county, Or., was without jurisdiction, even upon personal appearance, to render any decree which would affect the title to lands in Oklahoma; that the decree rendered did so attempt to affect the title to land in this state, and that it was therefore void, and not within the protection of the full faith and credit clause of the Constitution of the United States. No question is here made of the propriety of the Oregon court considering the answer and cross-petition of the defendant, in an action for divorce, or of the reply of the plaintiff in which he sought to have the land in Oklahoma vested in him. The sole question is made upon the one hand that the Oregon court had no jurisdiction to render the decree which it did, and upon the other hand that the decree rendered operated purely in personam; that the Oregon court, having jurisdiction of both parties, was competent to make such a decree, and that it is therefore res adjudicata of the same question in the instant case.

In examining the various contentions here made we may primarily rest our decision upon certain well-established principles:

First: The judgment of a court rendered without jurisdiction is void. That is elementary in all courts. The effect of such a judgment was but recently declared by this court in Jefferson v. Gallagher, 56 Okla. 405, 150 Pac. 1071.

Second. The jurisdiction which is the fundamental requisite to a valid judgment is of three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-matter; (3) jurisdiction of the particular matter which the judgment professes to decide. Jefferson v. Gallagher, supra.

Third. The jurisdiction of any court exercising authority over any subject may be inquired into in every other county when the proceedings of the former are relied on and brought before the latter by a party claiming the benefit of such proceedings. This right of examination into jurisdiction is not confined alone to domestic judgments, but extends as well to the judgments of the courts of sister states. This doctrine was recognized in the Supreme Court of the United States in Elliott v. Peirsol, 26 U. S. (1 Pet.) 329, 7 L. Ed. 164, and has been followed in many cases, among them Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897, Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101, Carpenter v. Strange, 141 U. S. 87, 11 Sup. Ct. 960, 35 L. Ed. 640, and Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 25 L. R. A. (N. S.) 924, 17 Ann. Cas. 853. It was announced by this court in Southern Pine Lumber Co. v. Ward, 16 Okla. 131, 85 Pac. 459; Earl v. Earl, 48 Okla. 442, 149 Pac. 1179, and In re Moore's Guardianship, 51 Okla. 731, 152 Pac. 378.

Fourth. Jurisdiction to render a judgment in rem inheres only in the courts of the

state which is the situs of the res. Watkins v. Holman's Lessee, 16 Pet. 25, 10 L. Ed. 873; Harrison v. Harrison, L. R. 8 Ch. 342; Davis v. Headley, 22 N. J. Eq. 115; Clopton v. Booker, 27 Ark. 482; Williams v. Nichol, 47 Ark. 254, 1 S. W. 243; Winn v. Strickland, 34 Fla. 610, 16 South. 606; Poindexter v. Burwell, 82 Va. 507; Cooper v. Ives, 62 Kan. 395, 63 Pac. 434; Smith v. Smith, 174 Ill. 52, 50 N. E. 1083, 43 L. R. A. 403.

Fifth. A court of chancery acting in personam may by its decree adjudicate the rights of the parties before it, even though such rights relate to lands in another state, but it may only make such decree effective by requiring, through process for contempt or otherwise, a conveyance by the party of the lands in question, thus indirectly affecting the title to the land in the foreign state, but it has no power by mere force of its decree to establish the title to such lands, or, in the absence of a conveyance by the party, to direct its master commissioner to execute a deed in his stead. See the voluminous notes to Proctor v. Proctor, 69 L. R. A. 673, Fall v. Eastin, supra, as reported in 25 L. R. A. (N. S.) 924, and Burton-Lingo Co. v. Patton, 27 L. R. A. (N. S.) 420, Hart v. Sansom, supra, and Carpenter v. Strange, supra. This doctrine is succinctly stated in Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 25 L. R. A. (N. S.) 924, 17 Ann. Cas. 853, supra, as follows:

"But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that, when the subject-matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. In such case the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment, or sequestration. On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated. 3 Pom. Eq. Jur. secs. 1317, 1318, and notes."

Examining the decree of the Oregon court in the light of these principles, we come to the contentions of the defendant in

error: First, that the decree does not attempt to vest any title to lands in Oklahoma, but inasmuch as the plaintiff (defendant in error here) was already the holder of the legal title, that title is not varied, changed, or affected, but only the alleged personal rights of the defendant are denied; second, that even if the decree be taken as affecting the title to lands in Oklahoma, only that much of the decree is invalid and the determination of the rights of the parties upon the principle of res adjudicata should preclude the determination of the same rights here, leaving the enforcement of such rights to the local courts.

Upon the first contention similar facts to those of the instant case appear not to have been passed upon in any decision which we have examined, in that the cases cited uniformly considered judgments where some change in the legal title to real property was involved, while here, the legal title, being already in the plaintiff, was but confirmed. The primary essential question for determination seems to be whether or not the decree of the Oregon court affects the title to real estate in Oklahoma. The Oregon court found that plaintiff was entitled to a judgment "decreeing and declaring that this plaintiff is the owner of all of said real property in Umatilla county, Or., and in Orchard Park addition to Oklahoma City in the state of Oklahoma, and the defendant has and shall have no right, title, interest or estate in and to any of said real property hereafter," and decreed that:

"Plaintiff, Landis Sharp, is the owner of * * * all of lot numbered 26, in block numbered 5, in Orchard Park addition to Oklahoma City in the state of Oklahoma, free from all rights, title, interest, estate, and claim forever of defendant, Jennie Sharp. * * *"

It thus appears that the Oregon court did not attempt to render a judgment in personam, in so far as the real estate was concerned, but in form at least rendered a judgment in rem. But it is said that, having found, as it did, that Jennie Sharp was not entitled to any interest in the real estate, it would have been a useless thing to decree that she should execute a deed or release of her interest when she had no interest to convey. This argument has some force, but nevertheless it seems that the decree of the Oregon court does in fact, not through any act required of the person, Jennie Sharp, but through the force of the decree itself, determine the validity of the asserted rights of Jennie Sharp in and to the real estate, and thus, not indirectly but directly, affects the title or status of lands in Oklahoma.

Otherwise of what force is the decree when introduced in the instant case? Jennie Sharp is asserting an equitable title to the Orchard Park property. To meet this assertion Landis Sharp introduces the record of the Oregon decree, claiming that it bars Jennie Sharp's asserted rights. Its effect, so taken, is to establish Landis Sharp's title, yet this is the very thing which the Supreme Court of the United States in Hart v. Sansom, supra, said a court of equity could not do.

"But in such a case, as in the ordinary exercise of its jurisdiction, a court of equity acts in personam, by compelling a deed to be executed or canceled by or in behalf of the party. It has no inherent power, by the mere force of its decree, to annul a deed, or to establish a title."

We conclude, therefore, that the effect of the Oregon decree, in so far as it related to the real estate, was to establish the title to lands in Oklahoma, and thus far it was beyond the jurisdiction of that court, coram non judice, and void.

The second contention above referred to appears to be concluded against the defendant in error by the discussion of the case of Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733 (cited by defendant in error), and Burnley v. Stevenson, 24 Ohio St. 474, 15 Am. Rep. 621, contained in Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 25 L. R. A. (N. S.) 924, 17 Ann. Cas. 853, supra. In Burnley v. Stevenson, supra. the defendant had received a conveyance made by a master commissioner under order of the Kentucky court in a suit for specific performance of contract. The conveyance was of lands in Ohio. The defendant in the Ohio court asserted title under this deed. It was held that the Kentucky court had no power by its decree to affect the title to lands in Ohio, and that if the court could not so affect the lands by its decree, it could not do so by deed of its commissioner, but that the decree bound the consciences of the parties and was a record of the equities which preceded it, and that the validity of the decree, in so far as it determined the equitable rights of the parties, should be upheld and enforced in the Ohio court. But the Supreme Court of the United States, apparently with reluctance, felt itself bound by force of its prior decisions to deny the doctrine of Burnley v. Stevenson, and with the same reluctance we follow the decision of the Supreme Court.

Upon the whole case, aside from the decision in Fall v. Eastin, supra, to which we have referred, Carpenter v. Strange, 141 U. S. 87, 11 Sup. Ct. 960, 35 L. Ed. 640, and Fire Ass'n v. Patton, 15 N. M. 304, 107 Pac. 679, 27 L. R. A. (N. S.) 420, supra, are not inapplicable. In Carpenter v. Strange, a court of New York having jurisdiction of all the parties had declared void a deed to lands in Tennessee, and that the defendant took no title under it. The Tennessee court refused recognition of the judgment. On appeal the Supreme Court of the United States said:

"A judgment in a state court against an executrix, declaring a deed from the testator to her of land in another state void as to a debt due from the testator to the plaintiff, but not directing a conveyance of the land, does not annul the title to the land, and is not binding upon the courts of the other state so far as to compel them to surrender jurisdiction over the land, which is exclusively subject to the laws and jurisdiction of the courts of the latter state."

And, again:

"To declare the deed to Mrs. Strange null and void, in virtue alone of the decree in New York, would be to attribute to that decree the force and effect of a judgment in rem by a court having no jurisdiction over the res."

In Burton-Lingo Co. v. Patton, supra, a Texas court, in suit in which all parties were before it, had declared void a release of a mechanic's lien covering lands in New Mexico. Later, in a suit in New Mexico between the same parties, it was sought to foreclose the lien, and the decree declaring the release void was pleaded as res adjudicata of that question, but the Supreme Court of New Mexico, reviewing the decisions of the Supreme Court of the United States, held that, inasmuch as the Texas court acted by force of its decree alone, and not through any compulsion of the parties, the decree was not conclusive in New Mexico.

In each of the above cases it will be seen that the former legal title was established as against a subsequent conveyance or release of such title. Here the legal title is established against an asserted equitable title. We do not conceive, however, that the principles are at all different.

So, we have concluded, also reluctantly, that, being not compelled by force of the constitutional provisions to give full faith and credit to the Oregon decree, we are concluded from affording it that effect through comity. In this state judgments void for lack of jurisdiction may be attacked or set aside in proper proceedings, by any party in interest at any time. The defendant had this right under our statutes. To concede, through comity, full faith and credit to the Oregon decree would be to deny defendant's rights and to confer upon that court, by judicial fiat, a jurisdiction which it does not have. However desirable it may be to have an end of litigation, and however strongly we may feel that

in the instant case the plaintiff in error in good conscience ought to be bound by the Oregon decree, it seems that consideration of this nature should be referred rather to the Legislature than the courts.

For errors in holding the Oregon decree conclusive and refusing plaintiff in error opportunity to establish her asserted equitable right, the decree of the superior court of Oklahoma county is reversed for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.