[Civ. No. 12159. Second Appellate District, Division Two.—March 20, 1939.]

CANTLAY & TANZOLA, INC. (a Corporation), Appellant, v. RAY INGELS, Director of Motor Vehicles, etc., Respondent.

Clock, McWhinney & Clock and R. A. Waestman for Appellant.

Burton B. Brace and J. Adrian Palmquist, as *Amici Curiae,* on Behalf of Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

WOOD, J.—Plaintiff, the owner of a fleet of automobile trucks and trailers, commenced this action to restrain the Director of Motor Vehicles from canceling license plates which had been issued for its vehicles and from seizing and selling the vehicles to enforce payment of a penalty in the sum of $4,823. The trial court gave judgment refusing relief, from which plaintiff appeals.

The facts are established by stipulation of the parties and by uncontradicted evidence. The last day for the payment of the registration fees without incurring a penalty for the year 1935 was February 14th of that year. On that date plaintiff mailed to the department at Sacramento three checks for the total sum of $4,823, drawn upon the Hollywood State Bank. At that time there was a great rush of business in the office of the department, causing a delay in the presentment of the checks. Two of the checks were deposited in a Sacramento bank and were presented to the Hollywood State Bank on February 27th. The checks were returned to the department on March 1st with slips attached thereto marked "Returned unpaid. Refer to maker". Plaintiff was notified by the department that the checks had been returned and at once communicated with officials of the Hollywood State Bank, who in turn immediately communicated with

the Department of Motor Vehicles by telephone and letter, advising the department that there was an error on the part of the bank in failing to make payment on the checks and requesting that the checks be returned. At the time the checks were drawn plaintiff had in his checking account at the Hollywood State Bank a sum sufficient to pay the checks and also had in his savings account at the same bank the sum of approximately $7,000. He had arranged with the vice-president of the bank to pay the checks on presentation out of the savings account if necessary, but the vice-president had overlooked informing the bookkeeper of this arrangement. Before the checks were presented the checking account had been diminished, and in the absence of instructions to the bookkeeper to pay the checks from the savings account the checks were returned to the department.

Plaintiff was first notified that the checks were unpaid on March 4th. Within two hours from the time of receiving the notification plaintiff procured cashier's checks for the amount of the original checks and presented the cashier's checks to the department, which retained both the original checks and the cashier's checks. The facts concerning the two checks above referred to are similar to the facts concerning the third check which was mailed on February 14th, except that there was a longer delay in presenting the third check to the bank, plaintiff being under the erroneous impression that this particular check had been paid when he secured the first two cashier's checks. Upon being notified of the facts concerning the third check a cashier's check was immediately supplied for the amount of the third check.

 Defendant contends that it was necessary for him to collect the penalty under the terms of section 81 of the California Vehicle Act, as in force in February, 1935. Subdivision (a) of section 81 provides: ''Whenever any vehicle shall be operated upon the public highways of this State without there having been paid therefor the registration or transfer fee required by this act, such fee shall be deemed delinquent. If such fee shall not be paid within thirty days after the same becomes delinquent a penalty equal to such fee shall be added thereto and collected.'' Subdivision (b) contains provisions for the seizure and sale of the vehicle to enforce payment of the penalty. The stipulation between the parties contains the following provision: ''That it is the

custom of the Department of Motor Vehicles to accept for collection checks tendered in payment of registration fees, and that the three checks issued and delivered to the Department as aforesaid were received by the Department in accordance with the above custom. That had said three checks been paid when presented for payment, the Department would have considered the registration fees paid within the time prescribed by law, but, due to the fact that the checks were not paid, the Department considered that the fees had not been paid as of February 14, 1935, and the registration fees on the vehicles set forth in paragraph III of plaintiff's complaint were therefore declared delinquent and subject to 100 per cent penalty."

Payment by bank check is not only the custom followed by the Department of Motor Vehicles but it is expressly authorized in tax matters by legislative enactment. In chapter 267, Statutes of 1921, it is provided that tax collectors may in their discretion accept bank checks which shall constitute payment when they have been duly honored and paid. In section 3 of this act it is provided that tax collectors accepting checks "shall deposit the same daily with a bank or banks for collection . . . " Payments of taxes or registration fees by check are conditional payments, but upon the checks being honored the payments relate back to the date of the receipt of the checks. (*Hubbard et al.* v. *Auditor General*, 120 Mich. 505 [79 N. W. 979].) Authorities on the subject are collected in *Eggleston* v. *Plowman*, 49 S. D. 609 [207 N. W. 981, 44 A. L. R. 1234].

The question is presented whether the checks were in effect honored and paid. This question must be considered in the light of the general rule that the law does not favor forfeitures and penalties. In *People* v. *Reis*, 76 Cal. 269, 277 [18 Pac. 309], Mr. Justice Thornton, speaking for the court, said that the two words, forfeiture and penalty, "seem to mean the same thing, when said of money, in which sense it imports a requirement to pay the sum mentioned as a mulct for a default or wrong". "Provisions for forfeiture of vested rights, whether in statutes or contracts, are not favored, and are, as they ought to be, construed as strictly or as liberally as possible against the forfeiture." (*People* v. *Perry*, 79 Cal. 105, 112 [21 Pac. 423].) "Penalties are never favored by courts of law or equity, and statutes im-

posing penalties or creating forfeitures must be strictly construed." (*Savings and Loan Soc.* v. *McKoon,* 120 Cal. 177, 179 [52 Pac. 305].)

Plaintiff has paid the full amount of its registration fees. The checks were promptly made good by plaintiff upon receiving notice of the mistake on the part of the bank and the state has not suffered any damage by reason of the slight postponement which was caused by the delay in the presentment of the checks and the oversight on the part of the bank official in notifying the bank's bookkeeper. The facts and the law applicable thereto should not be so construed as to bring about the harsh result of enforcing a penalty of $4,823, double the amount of the registration fees, a result not favored by the law, unless no other reasonable construction can be placed thereon. Such a construction is not necessary since plaintiff made the checks good immediately upon receiving information that the mistake had been made. The checks drawn on February 14th were *in effect* honored and paid by the substitution of the cashier's checks.

Defendant contends that the matter involved in the present action is *res judicata.* Before the commencement of the present action plaintiff had filed an action in which it asked for an alternative writ of mandate directed to defendant commanding him to issue license plates for the vehicles under discussion or to show cause why he had not done so. The license plates had in fact already been issued. Final judgment was entered in favor of defendant in that action after a demurrer had been sustained without leave to amend. When the present action was filed defendant answered setting forth, in addition to the matter hereinabove discussed, the plea of *res judicata* and a third defense predicated upon an alleged agreement between the parties made upon the termination of the first action. The trial court sustained plaintiff's demurrer to the answer and granted a motion to strike the allegations setting forth the defense of *res judicata.* Thereafter an amended answer was filed in which the defense of *res judicata* was not set forth, although certain allegations were made as a basis for the statement of the third defense. The record discloses discussions between counsel before the trial court from which it appears that counsel did not then consider that the defense of *res judicata* was being urged. The trial court properly found that "the

defendant waived any defense he may have had based upon the plea of *res judicata*". The matter is not now before us.

■ There is no merit in defendant's contention, as alleged, that plaintiff agreed to pay the amount of the penalties. Defendant's contention is based upon certain conversations between defendant's attorney and the attorney who represented plaintiff in the prior action, the conversations taking place at the time of the termination of the prior action. It is claimed that plaintiff agreed to pay the amount of the penalty upon an executed agreement on the part of defendant to refrain from seizing the vehicles for the period of 60 days. Among the findings of the trial court on this point the following appears: "It is not true, however, that said stipulation and agreement was made by and with the consent of said petitioner, nor was it made in writing and signed by the parties and filed in the records in said prior action, nor was it made in open court in said prior action." We find in the record no definite agreement by either plaintiff or his attorney to pay the amount of the penalty. Mr. Tapper, the attorney, testified that he had told Mr. Palstine, representing defendant, that Mr. Tanzola had told him that the claim *might* be paid if a reasonable extension of time for making the payment would be granted. Concerning a conversation with Mr. Tanzola, Mr. Tapper testified: "Mr. Tanzola said that he thought if I could get thirty, sixty or ninety days extension with respect to the payment of the claim, that they might pay it, but he wanted to talk to his associate, Cantlay, and I don't recall having heard anything further from him on it."

The judgment is reversed.

Crail, P. J., and McComb, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939.