[Civ. No. 27316. Fourth Dist., Div. Three. Sept. 13, 1983.]

RONALD O. PHELPS et al., Plaintiffs and Respondents, v. JOHN KOZAKAR et al., Defendants and Appellants.

EDWARD W. ESTRELLA, Plaintiff and Appellant, v. RONALD O. PHELPS et al., Defendants and Respondents.

COUNSEL

Charles T. Hindley and Kenneth L. Lindsey for Defendants and Appellants and for Plaintiff and Appellant.

Jon Pierre Paradis for Plaintiffs and Respondents and Defendants and Respondents.

OPINION

NOMOTO, J.*—John and Thelma Kozakar, defendants and cross-complainants in Phelps v. Kozakar (Super. Ct. No. 29-46-55) and Edward W.

---

*Assigned by the Chairperson of the Judicial Council.

Estrella, plaintiff in Estrella v. Phelps (Super. Ct. No. 35-25-49) appeal from an order compelling enforcement of a judicially approved settlement and stipulated judgment.

## FACTS

Phelps v. Kozakar, and a companion lawsuit, Estrella v. Phelps, were both settled in April 1981 after a two-day mandatory settlement conference. A stipulation for judgment was placed on the record and affirmed by the parties who were present (Ronald and Richard Phelps, John Kozakar, and Glen Huebner) and by the attorneys. Charles T. Hindley represented the Kozakars and Edward Estrella. Marjorie Estrella was also represented by Hindley although she was not a party to any of the actions and was in Nevada with her husband during the settlement conference. The stipulation provided for an award to the Phelpses against John Kozakar in the amount of $150,000 with 10 percent interest until paid; Phelpses' dismissal with prejudice of their action against Thelma Kozakar and the Kozakar trust; Estrella's dismissal with prejudice of his action against the Phelpses; and execution by Estrella and his wife of (1) a $150,000 promissory note in favor of the Phelpses, (2) a deed of trust on Estrellas' Nevada real property to secure the $150,000 note, and (3) a grant deed to the Phelpses conveying a 10 percent interest in the Estrellas' Nevada mining claims.

On May 1, 1981, the Phelpses' attorney sent Hindley the documents for signature by John Kozakar and the Estrellas to implement the stipulation. Six weeks later Estrella advised his attorney he would not go forward with the settlement; he and his wife proposed a different settlement of the lawsuits. Hindley communicated Estrella's proposed settlement to Phelpses' attorney, but nothing was resolved, and on August 13, 1981, the Phelpses filed a motion to compel enforcement of the settlement.

Hindley and Kozakar submitted declarations in opposition to the motion, but Edward and Marjorie Estrella did not, nor did they appear at the hearing of the motion. Kozakar, who was present during the settlement conference and advised the court he agreed to the settlement terms, contended he should not be bound by the settlement if the Estrellas were not also bound. The motion was granted by the judge who participated in the settlement and on September 18, 1981, the order compelling enforcement was filed. The order required the Estrellas and John Kozakar to sign the documents necessary to comply with the stipulation reached during the mandatory settlement conference, and directed the clerk of the court to execute the documents on their behalf if they failed to do so by September 21, 1981. The Estrellas and John Kozakar refused to comply with the order and the clerk signed the documents on September 24, 1981.

## DISCUSSION

The questions presented by this appeal are: (1) May Edward Estrella repudiate the settlement terms despite confirmation by his attorney? (2) May Marjorie Estrella, who was not a party to either action and who is not a party to this appeal, repudiate the settlement terms pertaining to her interest in the Nevada property? (3) Is Kozakar bound by the settlement? (4) Did the court have jurisdiction to order the clerk to execute documents affecting title to property located in Nevada?

### I

### *Edward and Marjorie Estrella and Kozakar Are Bound by the Settlement*

■ Public policy supports both pretrial settlement of lawsuits and enforcement of judicially supervised settlements. (*Ford* v. *State of California* (1981) 116 Cal.App.3d 507, 517 [172 Cal.Rptr. 162].) ■ Moreover "[t]here is a strong presumption that actions of an attorney are within the scope of his employment, absent a showing of the adverse party's knowledge of restrictions thereon. [Citations.]" (*City of Fresno* v. *Baboian* (1975) 52 Cal.App.3d 753, 757 [125 Cal.Rptr. 332].) ■ "[T]he client as principal is bound by the acts of the attorney-agent within the scope of his actual . . . apparent, or ostensible authority," especially where third persons have changed their position in justifiable reliance on the attorney's ostensible authority. (*Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367].)

In this case, Attorney Hindley orally represented to the court and parties at the mandatory settlement conference he had authority to stipulate to the settlement on behalf of the Kozakars and Estrellas:

"MR. PARADIS: Excuse me, your Honor. Mr. Hindley represents Mr. and Mrs. Estrella, and I assume, for the record, that he, likewise, is binding them?

"MR. HINDLEY: Yes.

"THE COURT: Do you have their authority?

"MR. HINDLEY: Yes, sir, I do. I have consulted with Mr. Estrella and I do have his consent."

In his declaration under penalty of perjury in opposition to the motion to compel enforcement of the settlement, Hindley confirmed the stipulation

accurately reflected the agreed-upon settlement, he had discussed the terms of settlement with Edward Estrella, and he believed he had authority to bind Edward and Marjorie Estrella to the settlement. Hindley reiterated this position at the hearing of the motion:

"MR. HINDLEY: You know, at this time, your Honor, I would like to reaffirm to the Court that, based on my knowledge and belief, I did have authority to stipulate to the judgment as recorded in the recorder's transcript which is a part of the record.

"THE COURT: I appreciate that.

"MR. HINDLEY: I will make that representation now, that I did have the authority to the best of my knowledge."

Hindley's declaration also contained hearsay statements by Edward Estrella concerning Estrella's alleged misunderstanding of the negotiated compromise. But the Estrellas did not submit declarations in support of their position, nor did they testify at the hearing of the motion to compel. ■ Without any competent evidence of disputed issues of material fact, the court properly ordered enforcement of the judicially supervised, pretrial settlement (see *De Groat* v. *Ingles* (1983) 143 Cal.App.3d 399 [191 Cal.Rptr. 761] and *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563].)[1]

■ Estrella next argues he is not bound by the settlement, because his "promise" to execute the note, deed of trust, and grant deed in favor of the Phelpses was unenforceable for lack of consideration. He is wrong. Adequate consideration existed. In addition to the usual reasons for settling a case, e.g., the uncertainty of success and to avoid additional expenses, Estrella desired to assist his longtime friend and associate, John Kozakar, who could not pursue further business ventures so long as these actions were pending.

Marjorie Estrella is bound, as is her husband, to the terms of the settlement. It is of no moment she was not a party to either action; she had an interest in the subject matter of the litigation and in fact participated,

---

[1] We acknowledge *Gregory* v. *Hamilton, supra,* has been "severely criticized" in several recent opinions because "a motion to enforce a pretrial settlement is to be treated as a motion for summary judgment" and denied if the court is faced with disputed fact issues. (*De Groat* v. *Ingles, supra,* 143 Cal.App.3d at p. 401; *Mancina* v. *Hoar* (1982) 129 Cal.App.3d 796 [181 Cal.Rptr. 347].) As the Estrellas did not present any competent evidence in opposition to the motion, within the meaning of Code of Civil Procedure section 437c, it is not necessary to distinguish decisions critical of *Gregory.*

through Hindley, in the proposal to change the terms of the agreed-upon settlement. (*Yanchor* v. *Kagan, supra,* 22 Cal.App.3d 544.)

As we have determined the Estrellas are bound by the settlement, Kozakar's derivative opposition also lacks merit.

II

*The Court Has Jurisdiction to Order the*
*Clerk of the Court to Execute Documents*
*Affecting Title to Nevada Property*

■ Finally, we determine whether a clerk of the court may be ordered to execute documents affecting title to out-of-state property when a party refuses to comply with an order to do so.

■ A court of one state cannot directly affect or determine title to real property in another. (*Fall* v. *Eastin* (1909) 215 U.S. 1 [54 L.Ed. 65, 30 S.Ct. 3]; *Taylor* v. *Taylor* (1923) 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074].) But a court with personal jurisdiction over the parties can compel them to execute a conveyance in the form required by the law of the situs. (*Muller* v. *Dows* (1877) 94 U.S. 444 [24 L.Ed. 207].) The Phelpses cite *Chamberlain* v. *Wakefield* (1949) 95 Cal.App.2d 280 [213 P.2d 62], as authority for the court's ordering the clerk to execute the conveyances: "If the court has power to order a party to convey land outside the state, it follows that upon his failure to do so the court has power to enforce its order by directing the clerk to execute the conveyance." (*Id.,* at p. 292.)

*Chamberlain, supra,* relies on *Tully* v. *Bailey* (1941) 46 Cal.App.2d 195 [115 P.2d 542], in reaching this conclusion. *Tully* held the court had jurisdiction not only to cancel deeds and require California defendants to execute waivers of their claims to Wisconsin real property, but also to appoint a commissioner of the court to accomplish these acts for the defendants. "Jurisdiction of the person in the state includes power to compel conveyance and waivers as to interests in lands outside the state. [Citation.] Such a decree does not operate directly upon the property nor affect the title. The decree is made effectual through the coercion of the parties by directing some action on their part or by enjoining them from doing a certain thing. [Citation.]" (*Id.,* at p. 198.)

*Tully* was cited with approval by the California Supreme Court in *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754 [146 P.2d 905]. Justice Traynor, the author of *Tomaier,* later authored *Rozan* v. *Rozan* (1957) 49 Cal.2d 322 [317 P.2d 11], where the wife in a marriage dissolution action was awarded

a community interest in North Dakota real property and the court held the judgment was "entitled to full faith and credit in North Dakota to the extent that it determines the rights and equities of the parties with respect to the land in question. An action on that judgment in North Dakota, however, is necessary to effect any change in the title to the land there. Thus, the judgment must be affirmed to the extent that it declares the rights of the parties before the court and modified to the extent that it purports to affect the title to the land." (*Id.*, at pp. 331-332.)

*Rozan* has been misinterpreted to imply that where a party refuses to execute the necessary conveyances, the clerk is powerless to do so and an action must be brought by the prevailing party on the judgment in the state of situs in order to effect a change in the title, contrary to *Chamberlain* and *Tully.* (See 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 143, p. 670.) But *Chamberlain* and *Tully* are readily distinguishable from *Rozan.* In *Rozan,* some claimants to the North Dakota property were not parties to the action, and a California judgment would "therefore not [be] binding on them." (*Rozan* v. *Rozan, supra,* 49 Cal.2d at p. 332.) If those persons were not bound, the clerk could not properly be instructed to convey property on their behalf. ▮ John Kozakar and Edward and Marjorie Estrella were bound by the stipulated judgment, however; the trial court correctly ordered the clerk to execute the conveyances to the Nevada real property on their behalf.

Judgment affirmed.

Crosby, Acting P. J., and Sonenshine, J., concurred.