[No. G010762. Fourth Dist., Div. Three. Feb. 11, 1992.]

WALTER GREENE, JR., Plaintiff and Appellant, v.
JEROME L. AMANTE et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Walter Greene, Jr., in pro. per, for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

OPINION

SILLS, P. J.—Occasionally we are faced with an appeal that presents an important issue almost in spite of itself. This is such a case. Walter Greene, an attorney representing himself in the trial court as well as here, appeals from a $794 discovery sanctions order levied against him for failure to fully respond to interrogatories. He claims the statute authorizing such sanctions is unconstitutionally vague, a claim we will reject in the unpublished portion of this opinion. The more interesting question for us, however, is whether Greene can appeal this order at this time. Three recent Court of Appeal opinions have reached differing conclusions when faced with this issue. We find that Greene is properly before us, but his victory is pyrrhic: We affirm the sanctions award.

FACTS

It did not take us long to thoroughly analyze the record on appeal in this case. It consists of one page. Greene, electing to file an appendix in lieu of the clerk's transcript (Cal. Rules of Court, rule 5.1), has provided us solely with a copy of the minute order from the hearing at which sanctions were awarded. We would think this has provided us with at least a tie for the world's shortest record on appeal.[1]

We really do not know what this case is about, since Greene has not provided us with copies of the complaint or the answer. We do not even

---

[1]If we have been bettered, this means that somewhere an appellate record consists of less than one page.

know the nature of the interrogatories to which Greene did not respond in a complete fashion.[2] We do know that, on January 29, 1991, the trial court granted defendants' motion to compel further responses, with 30 days to answer. We also know the court granted the motion for sanctions; it checked the box on the preprinted minute order form and, with appropriate handwritten additions, the order stated: "The court finds failure to answer interrogs was willful and without substantial justification and imposes sanctions in amount of $794.00 to be paid by plaintiff. Court reserves ruling on sanctions against Law Office of Walter Greene, Jr."[3] According to our records, Greene filed his notice of appeal in a timely fashion on March 5, 1991.[4]

DISCUSSION

I

■ We must first decide if an order directing the payment of $794 in discovery sanctions is appealable.[5] Code of Civil Procedure section 904.1 governs appeals from superior court in civil cases,[6] and subdivision (a) provides generally that an appeal may be taken from "a judgment." Subdivision (k) of the statute provides that an appeal may be taken "[f]rom a superior court judgment directing payment of monetary sanctions by a party or an attorney for a party only if the amount exceeds seven hundred fifty dollars ($750). Lesser sanction judgments against a party or an attorney for a party may be reviewed on an appeal by that party after entry of final judgment in the main action, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ."

The question of whether section 904.1, subdivision (k) (hereafter subdivision (k)) operates to make discovery sanction orders appealable has engen-

---

[2]Respondent's briefs are often very helpful in filling in such factual holes. Respondents here, however, did not file a brief, which is hardly surprising. They no doubt would have spent far in excess of the amount of the sanctions to file such a brief.

[3]This latter provision apparently made it easier for Greene to decide which checking account he should draw upon to pay the sanctions.

[4]Following oral argument Greene informed us by letter that the trial court had dismissed his action on December 11, 1991, supposedly as a result of an issue preclusion sanction made concurrently with the monetary sanction at issue here. He stated he had filed a notice of appeal from that dismissal. Greene claims that the issue of whether the appeal from the monetary sanctions order is proper is "academic," because all jurisdiction over his case now rests with us. Subsequent events, however, have no effect upon whether an order awarding sanctions is appealable. Stated another way, if the order awarding sanctions was not appealable when made, the later dismissal of the entire case would not transform it into an appealable order.

[5]Greene did not brief this issue, and failed to include a statement of appealability in his brief. (Cal. Rules of Court, rule 13.) After this case was calendared for argument, however, we sent a notice to counsel stating they should be prepared to discuss the issue of appealability at oral argument.

[6]All statutory references are to the Code of Civil Procedure.

dered considerable debate within the Second District Court of Appeal. In *Kohan* v. *Cohan* (1991) 229 Cal.App.3d 967 [280 Cal.Rptr. 474], Division One of the Second District held that discovery sanction orders over $750 are appealable under subdivision (k). The *Kohan* court listed three reasons to support its conclusion. First, subdivision (k) refers to court actions (payment of sanctions) which are almost always taken prior to final judgment, and thus are typically embodied in orders, not judgments. (*Id.* at p. 970.) Second, statutes authorizing sanctions generally provide for orders imposing sanctions, not judgments. (*Ibid.*, citing Code Civ. Proc., §§ 128.5, 177.5, 2023, subd. (b)(1).) Third, the legislative history of subdivision (k) consistently referred to the appeal of a judgment *or order* for the payment of monetary sanctions, thus "indicating a legislative intent that the subdivision apply to both judgments and orders." (229 Cal.App.3d at p. 970, citing Assem. 3d reading on Assem. Bill No. 157 as amended Sept. 11, 1989; Sen. Com. on Judiciary Summary of Assem. Bill No. 157 as amended Aug. 21, 1989 for Aug. 22 hg.; Assem. Com. on Judiciary dig. of Assem. Bill No. 157 for May 24, 1989 hg.) The losing party in *Kohan* did not seek review in the California Supreme Court.

*Kohan* was severely criticized by Division Three of the Second District in *Rao* v. *Campo* (1991) 233 Cal.App.3d 1557 [285 Cal.Rptr. 691]. According to *Rao*, "[t]he basic fallacy of the *Kohan* holding is its failure to distinguish between interlocutory or interim orders which are not appealable, e.g., orders imposing monetary discovery sanctions [citation], and final orders on collateral matters directing payment of money or performance of an act, which are directly appealable, e.g., monetary sanctions under section 128.5 [citation] and section 177.5 [citation]." (*Id.* at p. 1566.) The *Rao* court observed that, traditionally, discovery sanction orders have not been appealable (*id.* at p. 1565, citing *Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]), and felt that this time-honored distinction between discovery sanction orders (nonappealable) and other sanction orders (appealable) survived the enactment of subdivision (k).

The *Rao* court also criticized *Kohan*'s "fail[ure] to address" the effect of the amendment to subdivision (a) of section 904.1. (*Rao, supra,* 233 Cal.App.3d at p. 1567.) Subdivision (a) of section 904.1 was amended in 1989 (at the same time subdivision (k) was enacted), and provides that "an appellate court may, in its discretion, review . . . a judgment *or order* for the payment of monetary sanctions, upon petition for an extraordinary writ." (Italics added.) According to the *Rao* court, "[t]he word 'order' in subdivision (a) . . . signifies interlocutory or interim orders only. Neither the legislative history nor the language of section 904.1, as amended in 1989, supports an interpretation of subdivision (k) that would make discovery sanction orders over the sum of $750 independently appealable. Such orders

had never been appealable prior to the 1989 amendment of section 904.1 and there is no basis in law for construing such orders to be appealable pursuant to subdivision (k) after that amendment." (*Rao, supra,* 233 Cal.App.3d at p. 1568.) As in *Kohan,* the losing party in *Rao* did not seek review in the Supreme Court.

Most recently, Division Seven of the Second District joined the fray in *Ghanooni* v. *Super Shuttle of Los Angeles* (1991) 2 Cal.App.4th 380 [3 Cal.Rptr.2d 43]. The *Ghanooni* court pointed out subdivision (k) was not the first time the Legislature had set a "dollar minimum" to make sanction orders appealable. In 1988, the Legislature enacted section 904.4, which established a one-year pilot program applicable to San Diego County. Under this statute, discovery sanctions orders made pursuant to section 2023 (as well as sanctions imposed under § 128.5) were made appealable only if they exceeded $500. The purpose of the section was "to assess the impact of this section on a limited basis before making it applicable on a statewide basis . . . ." (Stats. 1988, ch. 789, § 1.) Unfortunately, former section 904.4 was never cited in the legislative history to subdivision (k), so we do not know what effect (if any) it had on subdivision (k). The *Ghanooni* court acknowledged that, by omitting any reference to section 2023 (or § 128.5) that had been previously contained in former section 904.4, subdivision (k) could be read to make any sanctions award appealable if it exceeded the statutory minimum of $750. (*Ghanooni, supra,* 2 Cal.App.4th at pp. 387-388, citing *Laborers' Internat. Union of North America* v. *El Dorado Landscape Co.* (1989) 208 Cal.App.3d 993, 999 [256 Cal.Rptr. 632].) Nonetheless, *Ghanooni* elected to follow *Rao,* stating that the failure to mention discovery sanctions in subdivision (k) could evidence a legislative intent not to expand the categories of appealable sanction orders, and that such a conclusion was consistent with the Legislature's expressed intent to restrict review of sanction awards in general. (*Ghanooni, supra,* 2 Cal.App.4th at pp. 387-388.)

We do not know if the losing party in *Ghanooni* will seek further review of that case. Suffice to say that we are currently without Supreme Court guidance on the issue before us, and we must therefore choose between these conflicting opinions. The courts in *Rao* and *Ghanooni* obviously felt that subdivision (k) does not operate to make previously nonappealable sanctions orders appealable. If we were to view this issue solely on policy grounds, we might well agree with these decisions. We do not believe, however, that subdivision (k) can be dismissed so easily. The legislative history of subdivision (k) cited in *Kohan* (and ignored in *Rao*) is very troublesome, because it completely undermines the theory that the absence of the word "order" in subdivision (k) was intentional or meaningful. We have independently reviewed the legislative history, and every relevant document states in essence

*that the amendment would eliminate the right of appeal "from a judgment or order"* directing sanctions in an amount less than $750. (See, e.g., Sen. Ways & Means Com. Summary of Assem. Bill No. 157 as amended May 16, 1989, for June 14 hg.; Office of Legis. Analyst, analysis of Assem. Bill No. 157 as amended May 16, 1989, prepared June 8, 1989.)[7]

The legislative history makes it clear that the Legislature thought the terms "order" and "judgment" were synonymous, at least as far as sanctions were concerned. This is hardly surprising; the words are used interchangeably among practicing civil lawyers. Appellate courts may be very cognizant of the difference between orders and judgments, but it seems that (at least in this instance) the Legislature was not. The Legislature's manifest concern appears to begin and end with the creation of a "bright line"—$750—above which immediate appellate scrutiny is authorized. We therefore disagree with the *Rao* court's conclusion that the use of the word "judgment" operates to preserve the dichotomy between discovery sanctions and other types of sanctions. Interestingly, the *Ghanooni* court reached the same conclusion on this point. (*Ghanooni, supra,* 2 Cal.App.4th at p. 388-389.)

We part company with *Ghanooni* (and our dissenting colleague), however, regarding the importance of presubdivision (k) cases holding discovery sanction orders nonappealable. Subdivision (k) makes no distinctions as to "types" of sanctions it embraces; it simply provides that sanction awards in excess of $750 can be appealed. While we recognize that the Legislature is presumed to approve of the judicial construction of a statute that is not altered by subsequent legislation (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134]), subdivision (k) is such "subsequent legislation." Further, we cannot ignore the fact that former section 904.4 created a distinction between types of sanctions made appealable, whereas subdivision (k) does not. We therefore believe that cases such as *Lund* v. *Superior Court, supra,* 61 Cal.2d 698, did not survive the enactment of subdivision (k).

It might be a very good idea (as pointed out by the dissent) to prohibit direct appeals of discovery sanction orders no matter what their amount. Then again, it might not. Consider the plight of a sole practitioner like appellant in this case, to whom the payment of a modest sanctions award (by big firm standards) may spell financial disaster. Waiting three or four years

---

[7] In fact, in a letter to the Governor following passage of Assembly Bill No. 157 in the Legislature, the Judicial Council (which had initially recommended the change to section 904.1) stated simply: "The bill would eliminate appeals from court imposed sanctions of less than $750." (Letter from Judicial Council to Governor Deukmejian, dated Sept. 29, 1989.) No mention was made of sanction "judgments."

to appeal from the final judgment in the underlying action is an inadequate remedy, and experienced lawyers know how difficult it often is to persuade a Court of Appeal to grant extraordinary relief. It is a legislative task to strike a balance between judicial administration and the right to immediate review of a sanctions order which in some cases might cripple an attorney's practice. However, we are not the Legislature, our task is to interpret subdivision (k) as it was drafted. We believe the effect of that statute is to allow an appeal from any sanctions order provided the amount in controversy exceeds $750.

We add one further observation. Unlike our dissenting colleague, we do not believe our interpretation of subdivision (k) will add appreciably to our workload. First of all, even under *Rao* and *Ghanooni* most sanctions orders over $750 are appealable, since the only apparent exception is discovery sanctions. Perhaps more important, however, is the fact that appeals solely from sanctions of any kind are rarely, if ever, cost effective. Most rational litigants and attorneys recognize that the expense involved in pursuing an appeal in this day and age—at least a few thousand dollars and often more—far exceeds the amount of the sanctions award. Quite frankly, we wish appellant in this case had engaged in a cost/benefit analysis prior to taking this appeal. Nonetheless, he is properly before us.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

For the reasons stated in the unpublished portion of this opinion, the order awarding sanctions is affirmed.

Moore, J., concurred.

**CROSBY, J., Dissenting.**—This appeal should be dismissed, not decided. It has long been the rule that discovery sanctions are not directly appealable. In my view the principle applicable here is this: " 'Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the

---

*See footnote, *ante*, page 684.

judicial construction and approves of it.' [Citations.]" (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134].) Because the amended statute fails to explicitly add discovery sanctions to the list of separately appealable orders, we must assume that remedy is not available. The Legislature surely would have said otherwise had it intended the expansion of Code of Civil Procedure section 904.1, subdivision (k) first conjured in *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1990) 223 Cal.App.3d 1429 [273 Cal.Rptr. 262],[1] given full bloom in *Kohan* v. *Cohan* (1991) 229 Cal.App.3d 967 [280 Cal.Rptr. 474], and now endorsed by my colleagues.[2]

My conclusion is buttressed by everyone's agreement that the statutory change was obviously motivated by a desire to restrict access to the appellate system (see, e.g., *Kohan* v. *Cohan, supra,* 229 Cal.App.3d at pp. 970-971), rather than increase it exponentially, as today's decision threatens to do.[3] The Legislature prescribed good medicine, but it was not meant for this patient.[4] Hopefully, it will so advise this term so that appellate courts might turn their attention to weightier matters. In the meantime, I would follow *Rao* v.

---

[1]There, the Court of Appeal hedged though: "We construe the order imposing the second sanction award of $800 as a judgment in order to preserve its appealability. Alternatively, we could of course treat the appeal as a petition for writ of mandate. [Citation.] Either way, we reach the merits." (223 Cal.App.3d at p. 1442, fn. 10.)

[2]Nor am I impressed by the suggestion that the Legislature's use of the word "judgment" was intended to encompass what has unanimously been viewed in the past as an nonappealable order. The Legislature surely knows the difference between orders and judgments. (See, e.g., Code Civ. Proc., § 904.1, subd. (a); Code Civ. Proc., § 473; *Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602 [275 Cal.Rptr. 887].)

[3]My colleagues remain unconcerned in the face of a possible avalanche of petty discovery sanctions appeals: "[W]e do not believe our interpretation of subdivision (k) will add appreciably to our workload." (Maj. opn., *ante* p. 690.) But consider this: Beginning 14 months ago with *Mattco Forge* and counting today's opinion, there have been 5 *published* cases involving appeals from pretrial discovery orders, squandering the time of 15 appellate justices and their staffs. This energy was invested in cases involving an *aggregate* sum that probably did not exceed $7,000 (the *Kohan* opinion does not reveal the amount of the sanctions at issue there). How many more have already been resolved in a less public manner by dismissal or resolution on the merits? Based on the usual ratio of published to unpublished opinions, 30 would be a reasonable estimate. How many more will follow when more attorneys become aware of the option? Plenty.

[4]More churning of files occurs in the discovery process than any other aspect of litigation. (*Mannino* v. *Superior Court* (1983) 142 Cal.App.3d 776, 778 [191 Cal.Rptr. 163].) If any part of the system needs reform, this is it. And the *last* reform that would make any sense would be to *require* the Court of Appeal to afford pretrial review of routine sanctions orders whenever the amount exceeded $750. It defies logic to suppose the Legislature intended to turn the intermediate appellate court into an adjunct of the law and motion departments of the superior courts and bury it in petty cases with generally less at stake than the average small claims appeal. The majority creates new billing opportunities for attorneys, but litigants and the system will suffer.

*Campo* (1991) 233 Cal.App.3d 1557, 1568 [285 Cal.Rptr. 691] and *Ghanooni* v. *Super Shuttle of Los Angeles* (1992) 2 Cal.App.4th 380, 389 [3 Cal.Rptr.2d 43] and dismiss the appeal. (See also *Imuta* v. *Nakano* (1991) 233 Cal.App.3d 1570, 1584, fn. 17 [285 Cal.Rptr. 681].)