[No. G011664. Fourth Dist., Div. Three. Sept. 16, 1992.]

WELLS PROPERTIES et al., Plaintiffs and Respondents, v.
RICHARD POPKIN et al., Defendants and Appellants.

COUNSEL

Rich & Ezer and Mitchel J. Ezer for Defendants and Appellants.

Walker, Kendrick & Jackson, Allan P. Leguay, Schmiesing & Blied, Timothy J. Blied and Kenneth W. Nickel for Plaintiffs and Respondents.

OPINION

**MOORE, J.**—Richard Popkin, Ruth Shamir and Jack Golan (Popkin) appeal from an order denying their motion to impose sanctions as prescribed by Code of Civil Procedure section 128.5[1] against Wells Properties and its attorneys, Schmiesing & Blied (Wells).

## FACTS

Popkin and Wells settled an action seeking an unpaid real estate commission. Under the terms of the agreement, Popkin would pay Wells $25,000 at a rate of $5,000 per month. Popkin also signed a stipulation for entry of judgment for $55,000. If any payment was late, Wells, at their sole discretion, had the right to declare a default and enter the judgment upon ex parte application without further notice.[2] Payments were to be wire-transferred to Wells's account on or before the 20th of each month.

Popkin made timely payments in November, December, and January. Popkin's secretary, Annette Ochoa, delivered the February payment to Popkin's bank on the 20th, but the bank's wire service had closed for the day. Consequently, Wells's account was not credited until the next morning.

February 21 was a day of frantic phone calls. Wells informed Popkin's attorney that because the payment had not been timely received, they were searching for the original stipulation for entry of judgment. Ochoa then called Wells's office several times. Tanya Needham, project manager for

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Richard Wells stated in his declaration he specifically negotiated for no grace period in order to ensure Popkin would make timely payments.

Paragraph 5 of the stipulation for entry of judgment reads in pertinent part: "In the event of default . . . the entire unpaid balance, plus any additional attorney's fees incurred in obtaining and entering said Judgment, shall immediately become due and payable, and Judgment may be entered forthwith by Plaintiff and/or Plaintiff's attorney without further notice to Defendants and Writ of Execution shall be issued forthwith. Defendants waive their rights to a hearing upon the Entry of Judgment and Notice of Application for Entry of Judgment."

Wells, spoke with her. Needham's declaration succinctly describes the desperation Ochoa was experiencing as a result of her late arrival at the bank the day before: "[Ochoa] said she wanted to beg [Wells] to let her make payments out of her own pocket until the total was paid, and that she was so sorry. She repeatedly accepted the blame for forgetting to get the money into the bank on time. . . . [¶] The conversation ended with [Ochoa] asking me, again, to beg [Wells] not to file the papers, that it was her fault and she really needed to talk to him." Wells failed to return Ochoa's call.

There was no communication between the parties until Mitchel Ezer, Popkin's attorney, wrote Wells on March 6, asking him to confirm the receipt of the February payment. There was no response. On March 12, Wells accepted Popkin's last $5,000 payment. On March 18, Ezer wrote again, asking if Wells had received both the February and March payments. Wells failed to respond, but that same day filed for and was granted a $40,000 judgment.

On April 26, Popkin's motion to vacate the judgment was granted. Undaunted, Wells sent Popkin a $937.75 bill for attorney fees and costs they had incurred in obtaining the invalidated judgment. Popkin's response was to file the underlying sanctions motion against Wells and their attorneys for $5,707.25 in fees and costs incurred in setting aside the judgment. The court's denial of that motion is the subject of this appeal.

## DISCUSSION

█ Section 904.1, subdivision (k) permits a party to appeal a judgment or an order directing it to pay monetary sanctions in excess of $750. (See generally *Greene* v. *Amante* (1992) 3 Cal.App.4th 684 [4 Cal.Rptr.2d 571].) However, *denial* of a motion for sanctions is not a judgment and is therefore not appealable. We recognize that we have the discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, but "we should not exercise that power except in unusual circumstances." (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].) Although we agree with many of the sentiments expressed in the dissenting opinion,[3] the circumstances are not sufficiently unusual to justify a departure from the one judgment rule. As this court has held, "A petition to treat a nonappealable order as a writ should only be granted under [the most] extraordinary circumstances, ' "compelling enough to indicate the propriety of a petition for writ . . . in the first instance . . . ." [Citation.]' " (*Estate of Weber* (1991) 229 Cal.App.3d 22, 25 [280 Cal.Rptr. 22], quoting *DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 437 [160 Cal.Rptr. 899].)

---

[3]It does appear that the attorneys for Wells violated the most famous of the Marquis of Queensberry rules.

A denial of a motion for sanctions simply does not present unusual and compelling circumstances.

DISPOSITION

The appeal is dismissed.

Sills, P. J., concurred.

**SONENSHINE, J., Dissenting.—**

I

As a general rule, an order denying a motion for sanctions is nonappealable because it can be appealed as part of the final judgment. Such is not the case here. There will never be a "final judgment" here from which defendants can appeal; the default judgment was vacated, and defendants have paid all money owing under the settlement agreement. The action has been concluded. If this case is not reviewed now, it never will be. The order *is appealable*, because it effectively terminates the action. (*Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237, 241-242 [173 Cal.Rptr. 345]; *Majors* v. *County of Merced* (1962) 207 Cal.App.2d 427, 432 [24 Cal.Rptr. 610].)

Moreover, even if the order is nonappealable, it should be treated as a petition for extraordinary relief. In *Estate of Hearst* (1977) 67 Cal.App.3d 777 [136 Cal.Rptr. 821], the court did so because the issue "involved a question of public importance appropriate for resolution." (*Id.* at p. 781.) Questions involving the scope and meaning of Code of Civil Procedure section 128.5 have widespread implications for both the legal profession and the public it serves.

II

Did Wells's entry of judgment and their refusal to set it aside warrant the imposition of sanctions as a matter of law?[1] Yes.

*Park Magnolia* v. *Fields* (1987) 191 Cal.App.3d Supp. 1 [236 Cal.Rptr. 900] is instructive. There a plaintiff, relying on a void default judgment, obtained a writ of possession against the defendant and then opposed

[1]Code of Civil Procedure section 128.5, subdivision (a) provides: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ."

defendant's motion to quash the writ. The appellate department of the superior court reversed the municipal court's denial of a request for sanctions. It based its decision on the definition pronounced in *Karwasky* v. *Zachay* (1983) 146 Cal.App.3d 679, 680 [194 Cal.Rptr. 292]: A bad faith frivolous claim is one a hypothetical reasonable attorney would agree is totally and completely without merit. The *Karwasky* court noted: " '[T]he concept of good faith has to include the concept that motions are brought, based upon at least some statutory law, or based upon some case law . . . .' " (*Id.* at p. 681.)

## LEGAL INDEFENSIBILITY

Would a reasonable attorney agree that it was legally indefensible for Wells to enter judgment under these circumstances? Yes. Wells relied on a forfeiture clause, i.e., a $30,000 penalty for Popkin's failure to timely make payments on a $25,000 obligation.

Civil Code section 3275 states: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his [or her] failure to comply with its provisions, he [or she] may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Forfeiture was accurately characterized in *Cantlay & Tanzola, Inc.* v. *Ingels* (1939) 31 Cal.App.2d 553, 556 [88 P.2d 141]: "[F]orfeiture and penalty, 'seem to mean the same thing, when [spoken] of money, in which sense [they] import[] a requirement to pay the sum mentioned as a mulct for a default or wrong.' "

Wells knew the February $5,000 payment had been made. Popkin's secretary's frantic phone call informed Wells the payment was late due to simple inadvertence, not gross negligence, willfulness or fraud. A reasonable attorney would have known that to enter the judgment in such circumstances was legally indefensible under Civil Code section 3275. (See, e.g., *Sybron Corp.* v. *Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, 898 [143 Cal.Rptr. 306], where the court set aside a stipulated judgment providing a penalty of $28,000 for a $30,000 default, finding the judgment unreasonable in proportion to the original obligation and the seriousness of the default.)

Here, the penalty was utterly out of proportion to the one inconsequentially late payment. Popkin's default was purely technical. Any reasonable attorney should have known the judgment would be set aside.

Additionally, any reasonable attorney would have realized that acceptance of the February payment constituted a waiver of the right to enter the

judgment under the forfeiture clause. "Waiver occurs where there is an existing right; actual or constructive knowledge of its existence; and either an actual intention to relinquish it, or conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that it has been waived." (*Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521, 534 [234 Cal.Rptr. 795].) Wells's acceptance of the payment was inconsistent with an intent to declare Popkin in default.[2]

Finally, a reasonable attorney would find Wells's opposition to Popkin's Code of Civil Procedure section 473 motion to set aside the judgment legally indefensible. The language and rationale of *Robinson* v. *Varela* (1977) 67 Cal.App.3d 611, 616 [136 Cal.Rptr. 783] is directly on point: "The law looks with disfavor upon a party who, regardless of the merits of his [or her] case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his [or her] adversary. Thus, the 'quiet speed' of a plaintiff's counsel in seeking a default has been deemed a sufficient ground for setting aside a default under section 473." Here, even knowing what they knew about the circumstances of the late payment, Wells refused to communicate with Popkin until the judgment had been entered. This gives the term "quiet speed" a whole new meaning. Wells should have known there was no legitimate basis for opposing Popkin's motion to vacate.

## BAD FAITH

Did Wells's course of conduct evince bad faith? Yes. First they breached professional ethics. They did not tell Popkin they were going to have the judgment entered, maintaining they did only that which the agreement allowed. However, "even if a legal step taken or legal procedure pursued [may] have justification in law, the timing thereof may be oppressive and may constitute harassment if it unjustifiably neglects or ignores the legitimate interest of a fellow attorney." (*Tenderloin Housing Clinic, Inc* v. *Sparks* (1992) 8 Cal.App.4th 299, 306 [10 Cal.Rptr.2d 371].) Furthermore, "attorneys customarily rely on oral or implied understandings that no default or other prejudicial step will be taken without notice, and breach of such informal agreements is often condemned as unethical." (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 158, p. 560.)

Wells's conduct was not confined to the secret entry of judgment, however. They refused to respond to Popkin's numerous inquiries for a clarifi-

---

[2]Wells asserts their acceptance of the February payment did not affect their right to declare Popkin in default. They rely on the clause in the stipulation for entry of judgment which states: "Acceptance of a late payment by Plaintiff shall not constitute a waiver nor in any way prejudice Plaintiff's right to receive and demand timely payments thereafter." This language deals only with the acceptance of a late payment and its subsequent effect upon *future* payments. The clause is irrelevant, however, to the determination of whether or not Wells waived their right to declare Popkin in default based on an accepted late payment.

cation of the situation. Then they had the gall to send Popkin a bill for their failed attempt to obtain a legitimate judgment. The judgment had been vacated! No doubt, it was this contemptuous display that finally provoked Popkin to file their modest request for $5,707.25 in sanctions.

SANCTIONS

The imposition of sanctions is a serious matter warranted only in the clearest of cases in order to penalize the most egregious misconduct. Any other approach might chill litigants' valid assertion of their rights. (*Weisman v. Bower* (1987) 193 Cal.App.3d 1231, 1237 [238 Cal.Rptr. 756].) In *Bach v. McNelis* (1989) 207 Cal.App.3d 852 [255 Cal.Rptr. 232], the court noted several policy guidelines regarding the imposition of sanctions: " '(a) an action that is simply without merit is not by itself sufficient to incur sanctions; (b) an action involving issues that are arguably correct, but extremely unlikely to prevail, should not incur sanctions; and (c) sanctions should be used sparingly in the clearest of cases to deter the most egregious conduct.' " (*Id.* at pp. 878-879.)

Wells's action in this case was not one "simply without merit" or even "extremely unlikely to prevail." The entry of the judgment against Popkin specifically contravened both statutory and case law. A reasonable attorney would have known such action was utterly and absolutely doomed from the moment of its filing. Moreover, once informed of the legal incompetence of the claim, a reasonable attorney would not have contested Popkin's motion to set the judgment aside.

Attorneys must be something more than hired guns willing to do anything for their clients simply because the client asks or a contract empowers. Wells argues sanctions are undeserved because they "acted in accordance with the provisions of the agreement between the parties by entering judgment." They essentially assert if one simply acts in accordance with the terms of an agreement one will be safe from the specter of court-imposed sanctions. Such is not the case. The terms of the agreement between Wells and Popkin gave Wells plenary power to declare Popkin in default and to obtain an ex parte judgment. This did not allow Wells to act in whatever manner they chose. To argue an action is justified because the contract "said we could do it" is not enough. Any action taken by Wells had to be in good faith and nonfrivolous. They may not cower behind the language of the agreement to relieve them of their accountability.

Business and Professions Code section 6068 states it is an attorney's duty "(c) To counsel or maintain such actions, proceedings, or defenses only as

appear to him or her legal or just . . . ." and "(d) To employ, for the purpose of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." One court noted that attorneys are court officers whose obligation to the court is as imperative as their duty to protect and defend their clients' interests. (*Daily* v. *Superior Court* (1935) 4 Cal.App.2d 127, 132 [40 P.2d 936].) "[C]ounsel, however zealous in his [or her] client's behalf, has, as an officer of the court, a paramount obligation to the due and orderly administration of justice . . . ." (*Chula* v. *Superior Court* (1952) 109 Cal.App.2d 24, 39 [240 P.2d 398].) As former Supreme Court Chief Justice Warren Burger once commented: "We must go back to the day when a lawyer's name on a pleading or a petition was like a signature on a check. . . . [¶] . . . [S]anctions . . . are one way to remind some members of the profession that as officers of the courts they have an obligation to the public and to the courts as well as to their clients." (Burger, *Questions and Answers with the Chief Justice* (Jan. 1985) 71 A.B.A.J. 91, 94.)

Wells failed their paramount obligation to the court when they effectively tried to swindle $30,000 from Popkin. The imposition of sanctions was necessary to punish Wells and deter the use of similar tactics throughout the legal profession.[3]

Popkin's motion for sanctions is based entirely on the attorney fees incurred in litigating Wells's pestiferous pursuit of a judgment to which they were not entitled. Mitchel Ezer's declaration enumerates the dates, times and work done on behalf of Popkin. Ezer's claim of $5,707.25 for 25.55 hours of professional work is altogether reasonable.[4] No further examination of the propriety of the statement by the trial court is necessary.

---

[3]Business and Professions Code section 6068, subdivision (o)(3) states it is the duty of an attorney to report to the agency charged with attorney discipline, in writing, within 30 days of the time the attorney has knowledge of the imposition of any judicial sanctions of more than $1,000 against the attorney.

[4]The request was made pursuant to Code of Civil Procedure section 128.5, but an attorney fees award would have been equally justified under Civil Code section 1717, subdivision (a) which provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

The agreement between Popkin and Wells provides for Wells's attorney fees associated with the stipulated judgment. Civil Code section 1717 makes fees available to the *prevailing party*, even though that party is not the same one entitled to attorney fees under the express terms of the contract. (*Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 507 [207 Cal.Rptr. 508].) Popkin was entitled to recover his attorney fees as the prevailing party on the contract.

I would let a peremptory writ of mandate issue directing the superior court to vacate its order denying Popkin's motion for sanctions and to enter a new and different order granting the motion and directing Wells and their attorneys, Schmiesing & Blied, jointly and severally,[5] to pay $5,707.25 to Popkin within 30 days of the finality of this decision. Under Civil Code section 1717, I would also order Wells and Schmiesing & Blied to pay Popkin's costs, including attorney fees, associated with prosecuting this appeal.

Appellants' petition for review by the Supreme Court was denied December 3, 1992.

---

[5]Absent evidence to the contrary, Schmiesing & Blied are presumed to have acted as authorized agents of Wells Properties. (*Phelps* v. *Kozakar* (1983) 146 Cal.App.3d 1078, 1082 [194 Cal.Rptr. 872].)