Filed 4/13/21 Estate of Manson CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of CHARLES M. MANSON, Deceased. | B303594 |
| | (Los Angeles County Super. Ct. No. 17STPB10966) |
| JASON L. FREEMAN,<br><br>    Petitioner,<br><br>    v.<br><br>MICHAEL A. CHANNELS,<br><br>    Objector. | |

ORIGINAL PROCEEDING. Petition for writ of mandate. Clifford L. Klein, Judge. Writ granted.

Alan S. Yockelson for Petitioner.

Timothy L. Lyons for Objector.

_____

This is a probate case in which petitioner Jason L. Freeman (Freeman) claims he is the grandson of Charles M. Manson (Manson) and seeks to be the administrator of the Estate of Charles M. Manson (Estate). The trial court granted the motion of objector Michael A. Channels (Channels) compelling a genetic test of Freeman and the remains of Manson to determine their relationship.

Freeman appealed the order, arguing thatit must be reversed because Probate Code section 6453[1] does not authorize an order of genetic testing to determine a grandparent-grandchild relationship. The order is not appealable. However, due to the unusual circumstances of this case, we opt to reach the merits by treating the appeal as a de facto petition for writ of mandate. We grant the writ of mandate and direct the trial court to vacate its order granting Channel's motion and enter an order denying his motion.

## FACTS

Prior to 1958, Manson was married to Rosalie Handley, and she gave birth to a son named Charles Millis Manson, Jr. (Manson Jr.).[2] In 1986, an Ohio court entered a default judgment against Manson Jr. and determined he is the natural father of Freeman. The judgment recited that Manson Jr. had been served by certified mail.

Manson Jr. committed suicide in 1993.

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

[2] Manson Jr. had multiple aliases that are not relevant to our discussion. The record suggests that his middle name might have been Miles, Millis or Milles.

2

Soon after Manson died in a Kern County hospital on November 19, 2017, Freeman filed a petition in Los Angeles County probate court claiming that Manson had died intestate and that Freeman was an heir who was entitled to Letters of Administration.[3]

Channels filed an objection to Freeman's petition. Also, Channels filed a petition to probate a will allegedly executed by Manson in 2002 that disinherited his children and made Channels the sole beneficiary.

On March 12, 2018, the Kern County Superior Court considered a petition by county counsel for Kern County to instruct the coroner regarding the disposition of Manson's remains. Various parties appeared. The court considered the impact of two purported wills and then entered an order stating: "Freeman is hereby determined to be the surviving competent adult next of kin of [Manson]. No sufficient probative evidence was provided to this court to refute Freeman's claim. The court orders that disposition of the remains are to be determined by Freeman[.]"

In Los Angeles County, Channels filed a motion to compel genetic testing of Freeman and Manson's remains to determine if they are related. Channels cited section 6453 as well as Family Code section 7551.

The probate court heard the motion on July 17, 2019, and then took it under submission. On August 30, 2019, the probate court granted the motion based on section 6453. In doing so, it interpreted the statute as permitting genetic testing to establish a grandparent-grandchild relationship. It further concluded: the 1986 Ohio default judgment was not entitled to full faith and

---

[3]     Freeman nominated Dale Kiken to act as administrator.

3

credit because there was no evidence that Manson Jr. received actual notice; and, the Kern County Superior Court order was not binding because it did not determine Freeman's paternity.

This appeal followed.

## APPEALABILITY

Appeals "'which may be taken from orders in probate proceedings are set forth in . . . the Probate Code, and its provisions are exclusive.' [Citation.]" (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125–1126.)  Notably, "'[a]n order is appealable, even if not mentioned in the Probate Code as appealable, if it has the same effect as an order the Probate Code expressly makes appealable.' [Citation.]"  If an appealed order is not made appealable by the Probate Code, an appellate court lacks jurisdiction to consider the appeal.  (*Katzentstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759, 771.)  Ordinarily, an appellate court must dismiss the appeal on its own motion.  (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645.)  There is an exception.  The appellate court can treat the appeal as a petition for an extraordinary writ.  (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401 [if there is no adequate remedy at law]; *Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055 [if the circumstances are unusual].)

In the notice of appeal and opening brief, appellant contends that the order granting respondent's motion to compel genetic testing is appealable pursuant to section 1303, subdivision (f).  With respect to a decedent's estate, that subdivision makes appealable the grant of an order "[d]etermining heirship, succession, entitlement, or the persons to whom distribution should be made." (§ 1303, subd. (f).)  Here, the

4

question is whether the order compelling genetic testing qualifies as one of those appealable orders.

When interpreting a statute, we must give effect to its plain meaning. (*Moreno v. Quemuel* (2013) 219 Cal.App.4th 914, 917–918 (*Moreno*).) Heirship means "the position or rights of an heir; right of inheritance; inheritance."[4] Succession denotes "the right, act, or process, by which one person succeeds to the . . . estate . . . of another."[5] Entitlement refers to the state of being entitled, a word indicating that a right has been granted to a person.[6] Distribution derives from distribute, which means "to divide and give out in shares; deal out; allot."[7]

The order compelling genetic testing did not determine who has the rights of an heir, who succeeds to Estate, who is entitled to any assets of Estate, or who should be given a share of Estate's assets. Nor did the order have that effect. At most, the order might be a precursor to a future order regarding whether Freeman is an heir. Thus, the order is not appealable. But because the matter at issue is an order compelling a genetic test, and because that test will involve an invasion of Freeman's privacy that cannot be undone, we exercise our discretion to treat

---

[4]    <https://dictionary.com/browse/heirship> [as of Mar. 23, 2021], archived at <https://perma.cc/5PF3-C353>.

[5]    <https://dictionary.com/browse/succession> [as of Mar. 23, 2021], archived at <https://perma.cc/L7F2-DRDH>.

[6]    <https://dictionary.com/browse/entitled> [as of Mar. 23, 2021], archived at <https://perma.cc/2RXQ-JLGJ>.

[7]    <https://dictionary.com/browse/distribute> [as of Mar. 23, 2021], archived at <https://perma.cc/6D7A-BKMN>.

this appeal as a de facto petition for writ of mandate.  The issues have been fully briefed by the parties, the record is adequate for review, and this is an unusual circumstance in which Freeman has no adequate remedy at law.[8]

## DISCUSSION

Freeman contends that the trial court improperly interpreted section 6543 and ordered him to submit to genetic testing.  A trial court's statutory interpretation is subject to de novo review.  (*Moreno*, *supra*, 219 Cal.App.4th at pp. 917–918.)  As previously noted, if a statute has a plain meaning, that meaning must be accepted.  (*Id*. at p. 918.)

Section 6453 appears in Chapter 2 of Part 2 pertaining to Intestate Succession in the Probate Code.  The first statute in that chapter, section 6450, provides, inter alia:  "Subject to the provisions of this chapter, a relationship of parent and child exists for the purpose of determining intestate succession by, through, or from a person in the following circumstances:  [¶] (a) The relationship of parent and child exists between a person and the person's natural parents, regardless of the marital status of the natural parents."

Section 6453 provides:  "For the purpose of determining whether a person is a 'natural parent' as that term is used in this chapter:  [¶]  (a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act . . . .  [¶]  (b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under

---

[8]    Because the issues are adequately briefed, we did not ask the parties for additional briefing.

6

subdivision (c) of Section 7630 of the Family Code[9] unless any of the following conditions exist: (1) A court order was entered during the parent's lifetime declaring parentage. [¶] (2) Parentage is established by clear and convincing evidence that the parent has openly held out the child as that parent's own. [¶] (3) It was impossible for the parent to hold out the child as that parent's own and parentage is established by clear and convincing evidence, which may include genetic DNA evidence acquired during the parent's lifetime. [¶] (c) A natural parent and child relationship may be established pursuant to section 249.5." (§ 6453.)

There is no reference to genetic testing in section 6453. While section 6453, subdivision (b)(3) refers to genetic evidence, that is only with respect to evidence offered during an action under Family Code section 7630, subdivision (c) to determine parentage. Section 6453, subdivision (b)(3) does not authorize a probate court to order genetic testing; rather, it specifies a condition allowing an action under Family Code section 7630, subdivision (c) to establish a natural parent/child relationship for purposes of intestate succession. We conclude that the trial court erred as a matter of law when it ordered genetic testing under the auspices of section 6453.

It bears pointing out that any civil court has the power to order genetic testing under Family Code section 7551, but that

---

[9]     Family Code section 7630, subdivision (c) provides that, unless otherwise specified, an action to determine parentage may be brought by "the child, a personal representative of the child, the Department of Children Support Services, a presumed parent or the personal representative or a parent of that presumed parent . . . , or, . . . a man alleged or claiming to be the father or the personal representative or a parent of the alleged father . . . ."

7

power is limited.  The statute provides, "[I]n a civil action or proceeding in which parentage is a relevant fact, the court may, upon its own initiative or upon suggestion made by or on behalf of any person who is involved, . . . order the woman who gave birth, the child, and the alleged genetic parent to submit to genetic testing."  (Fam. Code, § 7551.)  It does not authorize a civil court to order genetic testing of a person and the remains of another to prove or disprove a grandparent-grandchild relationship.  (See *Williams M. v. Superior Court* (1990) 225 Cal.App.3d 447, 450 [interpreting similar statutory language in former Evidence Code section 892 and stating that it "does not provide authority for the court to order . . . putative paternal grandparents to submit to blood tests"].)

We conclude that the probate court erred as a matter of law when it ordered the genetic testing of Freeman and Manson's remains.  All other issues are moot.[10]

---

[10]	Freeman challenges the probate court's ruling that the 1986 Ohio default judgment is not entitled to full faith and credit under Article IV, section 1 of the United States Constitution.  Channels argues that even if the 1986 Ohio default judgment is entitled to full faith and credit, it may not be binding on third parties such as him.  We express no opinion on either of these issues.

8

## DISPOSITION

The purported appeal is deemed to be a petition for writ of mandate and, as such, is granted. The trial court is directed to vacate its order granting Channel's motion and enter an order denying his motion.

Freeman shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ